**Michael GIESBRECHT, Petitioner,**

v.

**BOARD OF REVIEW OF the STATE INDUSTRIAL COMMISSION OF UTAH; and Smith's Food and Drug Centers, Inc., Respondents.**

**No. 910473–CA.**

Court of Appeals of Utah.

March 27, 1992.

John Preston Creer, Salt Lake City, for petitioner.

Ford G. Scalley, Salt Lake City, for respondent.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

GARFF, Judge:

Michael Giesbrecht petitions this court to review the Industrial Commission's denial of his worker's compensation claim. We affirm.

## FACTS

Smith's Food and Drug Centers, Inc. (Smith's) hired Giesbrecht as a meat cutter in June 1989. Giesbrecht's duties included unloading meat and supplies, stacking those supplies in the freezer, cutting prescribed cuts of meat for retail sale, and cleaning equipment. Giesbrecht unloaded approximately 14,000 pounds of meat three times a week. The boxes of meat ranged in size from 50 to 150 pounds and were stacked 40 boxes to a pallet.

On May 17, 1990, while stacking boxes of meat, Giesbrecht broke through a pallet causing him to twist his left leg. He reported this incident to his manager. On June 4, 1990, Giesbrecht slipped on the floor at work, lost his balance and injured his left leg. On June 5, 1990, Giesbrecht reported he was seeking medical care and was released from work.

On June 12, 1990, Giesbrecht was diagnosed with a left distal femur fracture. Smith's accepted liability arising from this fracture, paying temporary total disability from June 12, 1990 through December 5, 1990, and medical costs associated with the fracture.

On June 20, 1990, Giesbrecht was diagnosed with an aggressive osteogenic sarcoma tumor, a form of cancer, in his left

femur. After receiving chemotherapy treatments, his left leg was amputated in September 1990. Smith's did not pay any of Giesbrecht's medical expenses associated with the cancer.

Giesbrecht applied for additional temporary total disability compensation, additional medical expenses, and permanent partial disability compensation to compensate for the loss of his leg due to the cancer.

An administrative hearing was held March 25, 1991. Dr. Steven Scott, the treating physician, opined that the two industrial accidents did not cause Giesbrecht's cancer. Dr. Thomas Hawkes, an orthopedic surgeon, stated that the industrial accident resulting in the fractured femur "contributed nothing to the basic underlying disease process [of the cancer] other than bring[ing] it to diagnostic fruition." He also stated "there are several theories as to the origin of osteosarcoma, but none would support the injury of 17 May 1990 as the cause." The only other medical testimony was that of Dr. John Ward, who addressed reverse causation, that is, the cancer likely caused the fracture. No medical evidence suggested Giesbrecht's industrial injury caused or aggravated the cancer.

In sum, three medical experts testified at trial that the cause of the cancer is unknown. Two experts testified that the industrial injury did not cause or aggravate the cancer, and a third testified that the injury brought the cancer to light. The medical experts agreed that reverse causation existed. That is, the injury would probably not have taken place but for the weakening of Giesbrecht's femur due to the cancer.

The Administrative Law Judge (ALJ) denied the claim, determining Giesbrecht had not met his burden of proof because he did not provide any evidence demonstrating that his two industrial injuries or his workplace activities medically caused his cancer. The ALJ's Findings of Fact, Conclusions of Law, and Order were affirmed by the Industrial Commission (Commission).

Giesbrecht petitions this court to review the Commission's affirmation of the ALJ's decision. He claims the ALJ erred (1) in interpreting and applying the test found in *Allen v. Industrial Comm'n*, 729 P.2d 15 (Utah 1986), and (2) in applying the aggravation rule.

### THE *ALLEN* TEST

Giesbrecht claims the ALJ erred in interpreting and applying the *Allen* test for legal and medical causation.[1] The standard used to determine whether the ALJ correctly interpreted and applied *Allen* is governed by Utah Code Ann. § 63–46b–16 (1990). The applicable portions of this section require us to review the agency's record to determine whether the agency erroneously interpreted or applied the law so as to substantially prejudice Giesbrecht.

*Allen v. Industrial Comm'n*, 729 P.2d 15 (Utah 1986), sets out the test for determining whether a workplace injury and its resulting disability is compensable. *Allen* requires a claimant to show both legal and medical causation. *Id.* at 25–27. "To meet the legal causation requirement, a claimant ... must show that the employment contributed something substantial to increase the risk he already faced in every-

---

1. Giesbrecht cites *Fred Meyer v. Industrial Comm'n*, 800 P.2d 825 (Utah App.1986) and Arthur Larson, *Workmen's Compensation Law* (1990) in support of a novel interpretation of *Allen v. Industrial Comm'n*, 729 P.2d 15 (Utah 1986). His interpretation would remove a claimant's burden to show medical causation, thereby allowing recovery for any disease that develops during a worker's term of employment. Alternatively, Giesbrecht suggests that, where the cause of a disease is unknown, the burden should shift to the employer to show that the injury was not medically caused by workplace activity. However, acceptance of this argument would make the employer a general insurer of its employees and encourage fraudulent claims. *See Allen*, 729 P.2d at 27.

Giesbrecht cites authority specifically addressing legal causation in support of his theory regarding medical causation. We find no support for this theory in the case law cited or in our own research. In fact, *Allen* specifically denies recovery for those injuries that "coincidentally occur at work because a preexisting condition results in symptoms which appear during work hours without any enhancement from the workplace." *Id.* at 25.

day life because of his condition." *Id.* at 25. To meet the medical causation requirement, a claimant must "show by evidence, opinion, or otherwise that the stress, strain, or exertion required by his or her occupation led to the resulting injury or disability." *Id.* at 27. Because a claimant is required to prove both legal and medical causation, failure to prove either one precludes recovery.

■ Here, the ALJ, having found that Giesbrecht failed to show medical causation, did not reach the question of legal causation. We therefore first address whether the ALJ correctly applied *Allen* in determining that an exertion or injury that occurred during a work-related activity did not medically cause the cancer.

The ALJ made extensive findings based on testimony provided by each of the medical witnesses. These findings supported her conclusion that work-related activity did not medically cause the cancer. Dr. Scott testified that the two industrial accidents did not cause the cancer. Dr. Hawkes testified that the industrial accident "contributed nothing to the basic underlying disease process" other than bringing it to light. Finally, Dr. Ward testified that the cancer likely caused the fracture, and not the other way around. In short, no medical evidence supported the proposition that work-related activity caused or aggravated the cancer.

Thus the ALJ correctly interpreted *Allen* as requiring both legal and medical causation, and the ALJ correctly applied *Allen* in concluding that work-related activity did not cause the cancer. We therefore need not reach the issue of legal causation.

## THE AGGRAVATION RULE

■ Giesbrecht claims the ALJ erred in interpreting and applying the aggravation rule.[2] We apply the same standard as that used in the previous section. That is, the applicable portions of Utah Code Ann.

§ 63–46b–16 require that we review the agency's record to determine whether it erroneously interpreted or applied the law, in this case, the aggravation rule, so as to substantially prejudice Giesbrecht.

■ Utah law recognizes the aggravation rule such that where an industrial injury aggravates, accelerates, or combines with a preexisting condition, the entire resulting injury is compensable so long as the claimant can "show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition." *Allen v. Industrial Comm'n,* 729 P.2d 15, 25 (Utah 1986); *accord Powers v. Industrial Comm'n,* 19 Utah 2d 140, 427 P.2d 740, 743 (1967); *Nyrehn v. Industrial Comm'n,* 800 P.2d 330, 334–35 (Utah App.1990).

■ The concern in this case is the direction of medical causality. Here, the findings support the fact that the cancer may have contributed to or aggravated the femur fracture. However, the reverse must be true for Giesbrecht to recover: He must prove that the femur fracture contributed to, accelerated, or aggravated the cancer.

This is precisely the analysis applied by the ALJ. Relying on the testimony of Dr. Ward, the ALJ found that while the cancer contributed to the bone fracture, the bone fracture did not aggravate the cancer. The ALJ considered whether

it is possible the workplace fracture somehow speeded up the spread of the pre-existing cancer, making amputation necessary. While this argument possesses great emotional appeal, given the tragic nature of the surgery, there is no medical or factual evidence supporting this theory from any doctor. The only thing caused by Applicant's heavy labor at work was a femur fracture, for which the Defendants have accepted liability.

**2.** Giesbrecht again presents this court with a novel theory, this one based on the aggravation rule. Relying on the medical testimony that his femur fracture led to the diagnosis of his cancer, he argues that the definition of "aggravate" should include industrial injuries that lead to the discovery of a preexisting condition. This theory is not consistent with *Allen,* 729 P.2d at 25. *See* note 1.

**548**

The ALJ's analysis reveals that she correctly interpreted and applied the aggravation rule.

## CONCLUSION

The ALJ's decision, affirmed by the Commission, correctly interpreted and applied the *Allen* test and the aggravation rule. While we share the ALJ's sympathy for Giesbrecht and his tragic circumstance, we must affirm the order as a matter of law.

JACKSON and ORME, JJ., concur.