1997-NMCA-085

944 P.2d 883

**Joyce EDMISTON, Worker–Appellant,**

v.

**CITY OF HOBBS and Liberty Mutual Insurance Company, Employer/Insurer–Appellees.**

**No. 17197.**

Court of Appeals of New Mexico.

June 17, 1997.

Certiorari Denied Aug. 27, 1997.

Lowell Stout, Stout & Stout, Hobbs, Sarah M. Singleton, Carolyn A. Wolf, Montgomery & Andrews, P.A., Santa Fe, for Worker–Appellant.

Kimberly A. Franklin, Hatch, Allen & Shepherd, P.A., Albuquerque, for Employer/Insurer–Appellees.

## OPINION

BOSSON, Judge.

1. Worker Joyce Edmiston appeals a decision of the Workers' Compensation Judge (WCJ). She argues that the WCJ misapprehended New Mexico law on preexisting conditions and workplace injuries which led to an incorrect determination of Worker's benefits. We determine that the WCJ incorrectly applied the law to the facts of this case, and therefore reverse and remand.

## BACKGROUND

2. On September 28, 1994, Worker was a clerk for the City of Hobbs when she tripped and fell into a counter at work, twisting her back. Worker testified that she felt severe pain in her back after she tripped, but was determined to remain at work, although she did restrict her activities. The following day she kept a previously scheduled appointment with Dr. Ward, an oncologist, and told him about the back pain. Dr. Ward arranged for x-rays of the affected area which revealed compression fractures of several vertebrae in her spine. Worker then saw Dr. DuBose whose evaluation of the x-rays led him to suspect multiple myeloma, an incurable form of cancer marked by a thinning of the bones as well as painful lytic lesions on the bones. On October 7, 1994, Worker went to the Arlington Cancer Center in Texas for an examination by Dr. Dicke, a specialist in oncology and hematology, who confirmed the diagnosis of multiple myeloma and arranged for treatment. Worker never returned to her job with the City.

3. Three months later, in January 1995, Worker filed for compensation benefits with the Workers' Compensation Administration. A WCJ conducted a formal hearing in November 1995. The principal source of medical evidence at the hearing was the deposition of Dr. Dicke. Because of Worker's condition, Dr. Dicke opted to treat the cancer systemically through chemotherapy before treating the compression fractures conventionally or the bone lesions with radiation because radiation would have interfered with the chemotherapy. Dr. Dicke testified that, although the compression fractures would likely not have affected the natural course of the multiple myeloma, the back injury did cause Worker to be physically more incapacitated because of the increased amount of pain. Dr. Dicke also testified that, based on the bone scan, the multiple myeloma existed at the time of the work injury. Dr. Dicke estimated Worker's disability at approximately 80% due to the combined effects of the cancer and the compression fractures. At the time of the hearing, Worker was being given dilaudid and morphine to control the back pain.

4. Based on this testimony, the WCJ found that Worker suffered a compression fracture in the spine as a result of the work accident which aggravated the preexisting multiple myeloma; that the accident caused Worker to be more incapacitated than multiple myeloma without a fracture; that the cancer rendered Worker more susceptible to fractures of the spine; and the fracture affected the treatment of the disease due to the amount of pain involved. The WCJ agreed with Dr. Dicke that the cancer was concentrated in the lumbar area, including the area of the fractured vertebrae, and the WCJ observed that Worker was experiencing "a lot of pain in that area" at least at the time that she was first treated at the cancer center. The WCJ awarded temporary total disability from October 7, 1994 until February 9, 1995, concluding that Worker had been totally incapacitated from working during that period due to the combination of the fractured vertebrae and the multiple myeloma.

5. The WCJ then determined that the compression fracture had reached maximum medical improvement (MMI)[1] on February 9, 1995, based on Dr. Dicke's assessment that, after a second round of chemotherapy, there would be a waiting period of perhaps

---

1. MMI is "the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon rea-sonable medical probability as determined by a health care provider." NMSA 1978, § 52–1–24.1 (Repl.Pamp.1991).

two or three years to see if controlling the disease would improve the compression fractures. Evaluating Worker's condition after MMI to determine permanent partial disability, the WCJ determined that (1) without the multiple myeloma, Worker would have reached MMI from a compression fracture within 8 to 12 weeks after the accident, (2) there had been no additional specific treatment for the fractures since the initial x-rays and none had been recommended for the future, (3) Worker's current inability to work was a natural and direct result of the multiple myeloma alone and not the compression fracture, and (4) although the multiple myeloma was a preexisting condition it did not constitute a preexisting impairment as there had been no *evidence* of its existence before the accident.

6. Based on these determinations, the WCJ concluded that Worker was entitled to impairment benefits at only 10% based upon the compression fracture alone and was not entitled to any formula points under NMSA 1978, Sections 52–1–26.1 to –26.4 (Repl. Pamp.1991) because her current inability to work was due solely to the multiple myeloma. Worker appeals from that order. Employer does not challenge the award of temporary total disability.

## DISCUSSION

7. Worker argues that the WCJ erred as a matter of law in determining the degree of Worker's permanent partial disability because the WCJ failed to take into account the combined effect of the workplace injury and her preexisting condition. This case requires us to determine whether the WCJ imposed two new standards to be met by a worker who has a preexisting condition and then sustains a workplace injury: (1) whether the preexisting condition must actually impair the worker prior to the job injury and may not be a mere latent condition, and (2) whether the workplace injury must demonstrably worsen the preexisting condition. Worker contends that the WCJ's decision runs counter to New Mexico law as reflected in *Reynolds v. Ruidoso Racing Ass'n,* 69 N.M. 248, 258, 365 P.2d 671, 678 (1961) and *Leo v. Cornucopia Restaurant,* 118 N.M. 354, 359, 881 P.2d 714, 719 (Ct.App.1994). Before

discussing these contentions, we review the applicable legal standard.

### Preexisting Condition

8. New Mexico workers' compensation cases hold that when a preexisting condition combines with a work-related injury to cause a disability, an employee is entitled to benefits commensurate with the total disability sustained; our courts do not apportion workers' compensation benefits according to different causal factors as long as the disability is a natural and direct result of the accident as required by the Act (NMSA 1978, Section 52–1–28 (Repl.Pamp.1991)). *Reynolds,* 69 N.M. at 258, 365 P.2d at 678; *Leo,* 118 N.M. at 359, 881 P.2d at 719. It does not diminish the worker's entitlement to benefits that the preexisting condition may make a worker more susceptible to injury, nor does it matter that without the preexisting condition the work-related injury might have been less disabling or perhaps not disabling at all. *Reynolds,* 69 N.M. at 252–53, 365 P.2d at 674; *Leo,* 118 N.M. at 359–60, 881 P.2d at 719–20.

9. In defining this principle, both *Reynolds* and *Leo* relied upon Professor Larson's treatise on workmen's compensation. The following passage from the treatise which was cited in *Reynolds* bears repeating:

Pre-existing disease or infirmity of the employee does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought.

*Reynolds,* 69 N.M. at 255, 365 P.2d at 676 (quoting an earlier edition of the treatise which is unchanged in the latest edition at 1 Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 12.21 (1996)).

10. The facts of *Reynolds* are similar to those of this case. There, the worker, who handled horses at a race track, suffered from an unknown preexisting condition, osteoporosis, which had not yet affected his ability to work. *Reynolds,* 69 N.M. at 250, 365 P.2d at 673. While riding a horse, the worker sustained a compression fracture of a

spinal vertebra, which combined with the osteoporosis to disable him totally. *Id.* at 251, 365 P.2d at 674. The Supreme Court found that the worker was entitled to compensation for the entire resulting disability even though it would not have been as great without the preexisting condition. *Id.* at 258, 365 P.2d at 678. The Court found that a causal connection and a right to compensation existed when an "injury is to a bone, and the disease being suffered is to the bones, and the total disability results from the concurrence of the two factors," even though there had been no finding that the injury had aggravated or accelerated the preexisting disease. *Id.*

11. More recently, in *Leo,* this Court addressed the effect of a preexisting condition upon a disability determination when the worker's preexisting heart and lung problems restricted the treatment and recovery of a workplace back injury. *Leo,* 118 N.M. at 356, 881 P.2d at 716. After reviewing the recent extensive legislative revisions of the Workers' Compensation Act, the Court determined that the legislature intended the new provisions of the Act to be implemented in a manner consistent with New Mexico case law on preexisting conditions and cited *Reynolds* as an example of that law. *Leo,* 118 N.M. at 360, 881 P.2d at 720. The Court reaffirmed the principle that when a preexisting physical impairment combines with the impairment from a work injury to produce disability, the two must be considered together when determining worker's permanent partial disability. *Id.*

12. These two cases support Worker's claims of legal error. First, the WCJ's distinction between the causal effects of a preexisting impairment as opposed to a preexisting condition is erroneous as a matter of law. Employer argued, and apparently persuaded the WCJ, that it is only responsible when a workplace injury combines with an actual impairment which has made itself known, as opposed to a latent preexisting condition such as the multiple myeloma in this case and the osteoporosis in *Reynolds.* Employer contends that *Leo* was conditioned upon preexisting heart and lung impairments, which were known to the worker.

Therefore, the effects of a preexisting condition that is unknown or latent cannot be considered in determining the degree of a worker's disability. As further support for this position, Employer points to the Subsequent Injury Act (SIA), which was enacted to encourage employers to hire the workers with known disabilities by compensating employers for any impairment attributable to the preexisting disability. *See* NMSA 1978, §§ 52-2-1, -14 (Repl.Pamp.1991). Employer argues that allowing workers to recover workers' compensation benefits for a disability partially caused by an unknown preexisting condition, when the employer would be ineligible for pro rata compensation from the Fund, would be unfair. Employer suggests that the legislature intended that recovery for the worker be reciprocal with an employer's ability to recover under the SIA.

13. Employer's argument does not persuade us. First, although the worker in *Leo* did have a known preexisting condition, we do not read the opinion to turn on that point nor to establish that as a requirement for future cases involving preexisting conditions, and we so hold. The *Leo* opinion relied upon the precedent established in *Reynolds* in which the preexisting condition was unknown before the workplace accident. *See Leo,* 118 N.M. at 359, 881 P.2d at 719 ("In this case, we believe Claimant's situation is similar to that of the worker in *Reynolds;* thus, we conclude that in determining Claimant's residual physical capacity, the Judge correctly applied the applicable law and considered the effects of both the accidental injury and Claimant's preexisting impairment."); *see also Leo,* 118 N.M. at 360, 881 P.2d at 720 (determining that the legislature intended the statutory formula in Sections 52-1-26 to -26.4 be applied in light of the precedent established by *Reynolds*).

14. Second, we reject Employer's argument that the legislature regarded an employer's ability to recover under the SIA as a prerequisite for a worker's receiving compensation benefits. Employer cites no authority for this proposition, and with good reason. The language of the SIA counters such an argument: "the Subsequent Injury Act shall not be construed to ... affect in any way the

workers' compensation benefits due to an injured employee." NMSA 1978, § 52–2–2(D) (Repl.Pamp.1991). We have previously noted that the legislature enacted the SIA in response to the rule articulated in *Reynolds* allowing employee compensation for aggravation of a latent preexisting condition. *Leo*, 118 N.M. at 359–60, 881 P.2d at 719–20. But this is not to say that in every case where *Reynolds* would apply, the SIA must necessarily come to an employer's aid; or put another way, that if the SIA would not help an employer, *Reynolds* and *Leo* do not apply. The SIA deals only with known conditions, because its purpose was to encourage employers to hire workers with impairments; if the impairment was unknown, the employer would need no encouragement. The legislature struck a balance between fairly compensating an injured worker and protecting an employer who hires a worker with a preexisting condition. We also observe that the legislature recently eliminated an employer's recovery under the SIA while retaining the employer's responsibility under the Workers' Compensation Act. *See* §§ 52–2–1, –14 (Cum.Supp.1996).

15. It is true that the Workers' Compensation Act establishes some causal limits to an employer's responsibility. The accidental injury must have been work related and any resulting disability must be the natural and direct result of the accident. *See* §§ 52–1–9, –28. In *Clavery v. Zia Co.*, 104 N.M. 321, 322, 720 P.2d 1262, 1263 (Ct.App.1986), the worker had suffered a back injury at work and a year later was diagnosed with breast cancer. We did not allow the worker to receive compensation for disability based upon the combined effect of the work-related injury and the later unrelated illness. *Id.* at 323, 720 P.2d at 1264. We reached a similar result in *Holliday v. Talk of the Town Inc.*, 98 N.M. 354, 356, 648 P.2d 812, 814 (Ct.App. 1982) in which the worker had sustained a scheduled injury to his hand and later became totally disabled due to emphysema. This Court concluded that an illness which was not causally connected to either the compensable injury or to employment could not be combined with the work injury to increase compensation benefits. *Id.* In both cases, however, the diseases had no connection to

the workplace injury. In contrast, in *Reynolds*, the worker's preexisting osteoporosis did combine with the back fracture to produce a single disability. In *Leo*, treatment for the worker's back injury was restricted by the preexisting heart and lung problems. In both cases, there was evidence that the work injury and the preexisting condition combined in some articulable fashion to produce an overall result.

16. When, as in this case, an employer challenges whether the disability is the natural and direct result of the accident, a worker must establish a causal connection between the two to a medical probability. *See* § 52–1–28(B). The worker must meet this burden of persuasion by producing expert medical testimony as to causation. *Id.* Worker produced uncontroverted medical evidence from Dr. Dicke and Dr. DuBose about the disability resulting from the combined effect of the compression fractures and the multiple myeloma.

17. When medical opinion on causation is uncontradicted, that evidence is conclusive on the question of the causal connection between the accident and the disability. *Beltran v. Van Ark Care Ctr.*, 107 N.M. 273, 275–76, 756 P.2d 1, 3–5 (Ct.App.1988); *Ross v. Sayers Well Servicing Co.*, 76 N.M. 321, 326, 414 P.2d 679, 683 (1966). Worker produced uncontroverted medical evidence as to the combined effect of the compression fractures and the multiple myeloma. Employer presented no independent medical evidence. The WCJ made no finding regarding any reason to discard Worker's medical evidence on independent grounds such as for reasons of impeachment, and the WCJ was asked to do so by Employer. Faced with evidence of combination, the burden of production should be upon an employer to show that the effects of the preexisting condition are identifiably separate and unrelated so that they fit within the narrow exception to the *Reynolds* rule articulated in *Clavery* and *Holliday*, and limited further by *Leo*. *Leo*, 118 N.M. at 359, 881 P.2d at 719 ("In both cases, this Court held that the Workers' Compensation Act does not allow an award of compensation benefits based on later injuries or illnesses that are wholly unrelated to either the em-

ployment or the original compensable injury.").

### Aggravation of Preexisting Condition

18. Given the presence of a preexisting condition, the second principle of *Reynolds* and *Leo* is that the WCJ must consider the combined effects of the two when the job injury has either " 'aggravated, accelerated, or combined with the disease or infirmity to produce the ... disability.'" *Reynolds*, 69 N.M. at 255, 365 P.2d at 676 (quoting 1 Larson, *supra*, § 12.21). The WCJ found that the compression fractures "to a medical probability ... aggravated the preexisting multiple myeloma," and granted temporary total disability; yet the WCJ concluded that Worker's post–MMI inability to work was due to the cancer alone and not to any combination of the two. How did this change come about?

19. The WCJ appears to have relied on two factual observations: (1) the compression fractures did not affect or aggravate the natural course of the cancer, and therefore post–MMI, the cancer itself might have been just as disabling with or without the bone fractures; and (2) without the cancer, the compression fractures would have been expected to heal in 8 to 12 weeks. Therefore, the WCJ seems to have inferred that after MMI any remaining disability must have been due to the cancer (except for the 10% residual impairment).

20. Employer argues in support that, post–MMI, the pain from the compression fractures was not a disabling factor, especially when compared with the cancer, and that there was no treatment or therapy prescribed for the back injury. Employer also notes the absence in the work restrictions of any one element due solely to the back fractures as compared with the cancer. Finally, in its brief on appeal, Employer argues to this Court the following telling point: "The WCJ *did not* make any findings that the Worker's cancer was worse, because of the compression fracture, than it would have been without the compression fracture. That is the finding that would have been necessary for the judge to find a permanent aggravation of an underlying condition."

21. We again look to *Reynolds* and *Leo* for the appropriate legal standard. Our law does not require a "permanent aggravation" of the preexisting condition, nor does it limit compensation benefits exclusively to the extent of the aggravation, as Employer insists. An employer is responsible for the full extent of the impairment " 'if the · employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought.'" *Reynolds*, 69 N.M. at 255, 365 P.2d at 676.

22. Combination of the workplace injury and the preexisting condition allows the flow of influence to go in either, or both, directions. That is, the workplace injury may make the preexisting condition worse or, as in *Reynolds*, the debilitating effects of the workplace injury may be made worse by reason of increased susceptibility to harm as a result of the preexisting condition. As the *Reynolds* opinion noted, "aggravation" or "acceleration" of the underlying condition are not requirements for recovery nor should these terms be used to limit recovery. *Reynolds*, 69 N.M. at 258, 365 P.2d at 678.

23. We will assume, as the medical evidence suggests, that the multiple myeloma itself cannot be described as being worse because of the workplace injury. It is, after all, an incurable disease. However, if that were the standard for compensation benefits, as Employer argues, then the worker's osteoporosis in *Reynolds*, as well as the worker's heart and lung condition in *Leo*, would have been excluded in determining total benefits in those cases. The appropriate standard in those two cases, as in this one, is whether the preexisting condition and the workplace injury combined to produce an overall condition of disability.

24. In this case, the record is uncontradicted, and the WCJ so found, that the cancer and the back injury did in fact combine to incapacitate Worker until the date of MMI. If there had been evidence that, post–MMI, the Worker had fully recovered from the effects of her compression fracture, then it might follow that any permanent disability would be due to the cancer alone. But the

WCJ did not so find, which is not surprising because the medical evidence would not have supported such a finding. Dr. Dicke spoke of the continuing incapacity due, in part, to excruciating pain in the same lumbar area as the compression fracture, and the limitations imposed by the cancer on treating the back injury directly. In addition, Worker's fracture was more severe and more painful because of the effect of the cancer on the structural integrity of the bone. Thus, the cancer made the injury worse, increased symptomatology, and made the fracture more difficult to treat. Indeed, even the WCJ found a permanent impairment of 10% from the compression fracture. Therefore, as in *Reynolds*, where "the injury is to a bone, and the disease being suffered is to the bones, and the total disability results from the concurrence of the two factors, the right to compensation for the resultant condition cannot be successfully questioned." 69 N.M. at 258, 365 P.2d at 678.

25. The WCJ determined that the compression fractures alone would have been expected to heal in 8 to 12 weeks in a healthy worker, unburdened by the preexisting cancer. But the test is not what would have happened to someone else. As the court noted in *Reynolds* " 'the question is not what the accident would have done to a different man but what it actually did to its victim.' " *Reynolds*, 69 N.M. at 257, 365 P.2d at 677 (quoting *National Homeopathic Hospital Ass'n v. Britton*, 147 F.2d 561, 564 (D.C.Cir. 1945)). As Professor Larson has noted, "the employer takes the employee as it finds that employee." 1 Larson, *supra*, § 12.21; *see*

*Buchanan v. Kerr–McGee Corp.*, 121 N.M. 12, 19, 908 P.2d 242, 249 (Ct.App.), *cert. denied*, 120 N.M. 715, 905 P.2d 1119 (1995).[2]

## CONCLUSION

26. In the final analysis, Employer has misconstrued the full import of our decisions in *Reynolds* and *Leo*. In effect, Employer makes a plea for proportional allocation, because it would be unfair for Employer to have to pay for any more of Worker's present condition than can be allocated precisely to the worksite fall. But that is not the law in New Mexico. The WCJ appears to have relied incorrectly on such argument and the compensation order was erroneously based on that misperception of the appropriate legal standard.

27. Accordingly, we reverse and remand with instructions for the WCJ to apply the standard outlined herein to the facts of record and recalculate Worker's permanent partial disability in conformity therewith.

28. IT IS SO ORDERED.

BUSTAMANTE, J., concurs.

HARTZ, C.J., concurs in part, dissents in part.

HARTZ, Chief Judge (concurring in part, dissenting in part).

(29) I concur in the remand to the Workers' Compensation Judge (WCJ) for further proceedings. Additional findings are necessary to determine the benefits to which Worker is entitled. I dissent from the majority opinion, however, to the extent that it

---

2. We note in the lengthy dissent of our brother Chief Judge Hartz a reluctance to accept the rather straightforward standard of "aggravated, accelerated, *or* combined" that is now indisputably the law in New Mexico. Relying on what it perceives as a general rule elsewhere and its own interpretation of our Act, with which we do not agree, the dissent would now introduce into workers' compensation lexicon a host of new conditions for worker recovery, such as: disability is not compensable if it arises from the natural progression of a pre-accident condition; to be compensable the work-related accident must aggravate the preexisting condition by changing the course of the ailment or its condition; the aggravation of the condition cannot be merely transient; and perhaps others. The WCJ is advised that this opinion categorically rejects these ef-

forts to read into the Act any prerequisites for recovery which are neither expressed in the statute nor implicit in the controlling New Mexico case law of *Reynolds* and *Leo*. Furthermore, the concerns of the dissent are not well-grounded in the facts of the case at hand; they are directed more at some hypothetical situation distinct from this record. As for out-of-state case law, we would have thought it clear by now that "[b]ecause of material differences in the wording of our partial disability statutes, ... cases from other jurisdictions provide little assistance in interpreting our [Act]." *Leo*, 118 N.M. at 358, 881 P.2d at 718. Finally, we reject the dissent's invitation, however advisable it may be regarded by its author, to permit further evidentiary proceedings by the WCJ. The remand is limited to that set forth in this opinion.

appears to expand improperly our decision in *Leo v. Cornucopia Restaurant,* 118 N.M. 354, 881 P.2d 714 (Ct.App.1994).

(30) Although I agree with much of the majority opinion, I cannot agree that Worker is necessarily entitled to benefits for all disability caused by her work-related accident and her myeloma. According to the WCJ's findings, the progression of her myeloma and the treatment of the disease were not affected by the work-related injury. As I understand the principles of New Mexico workers' compensation law, Worker is therefore not entitled to disability benefits for those disabling effects of Worker's myeloma that arose after Worker's accident.

(31) The majority opinion states the general rule in New Mexico that the employer takes the worker as it finds the worker. For example, if the worker has only one eye and loses that eye as the result of a work-related accident, the employer is responsible for the disability resulting from worker's total blindness. New Mexico has not joined those states that apportion disability so that the employer is not responsible for the post-accident disability to the extent that the disability can be attributed to a pre-accident disabling condition. *See* 2 Arthur Larson, *The Law of Workmen's Compensation* § 59.21 (1994) (New Mexico has, however, permitted employers to obtain some relief through a subsequent injury fund, *see* NMSA 1978, § 52–2–1, –4, –9, –11, –12, –14 (Repl. Pamp.1991), although the statutory authorization for that fund expires in 1999, *see* 1996 N.M. Laws (1st S.S.) ch. 10.) Thus, in *Reynolds v. Ruidoso Racing Ass'n,* 69 N.M. 248, 365 P.2d 671 (1961), the worker was entitled to benefits for total disability resulting from the combination of a work-related back injury and preexisting, asymptomatic osteoporosis. In *Leo* we held that the worker was entitled to disability benefits based on consideration of not only the worker's work-related back injury but also the worker's heart and lung conditions existing at the time of the injury.

(32) Nonetheless, to say that the employer takes the worker as it finds the worker, is not to say that the employer takes the worker as the worker later *becomes,* at least

insofar as the work-related accident bears no responsibility for the post-accident change in the worker's condition. In *Aragon v. State Corrections Department,* 113 N.M. 176, 824 P.2d 316 (Ct.App.1991), the worker suffered a work-related back injury and then aggravated the injury while attempting to repair his personal truck at home. *Id.* at 177, 824 P.2d at 317. We held that the worker could recover benefits for his disability after the second injury only if the disability "was a direct and natural result of the [earlier] injury—that is, a disability that arose from a combination of his [earlier] injury and the normal physical strains of daily life." *Id.* at 181, 824 P.2d at 321. *See* NMSA 1978, § 52–1–28 (Repl.Pamp.1991) (disability is compensable only if "a natural and direct result of the accident"). We pointed out that "the worker is not ... provided an insurance policy of indefinite duration to cover every non-work-related accident that magnifies the original injury." *Id.* at 179, 824 P.2d at 319.

(33) Similarly, in *Clavery v. Zia Co.,* 104 N.M. 321, 720 P.2d 1262 (Ct.App.1986), the worker was diagnosed with breast cancer a year after suffering a compensable back injury. Noting that Section 52–1–28 requires that the disability be "a natural and direct result of the accident," the Court reversed an award that considered the breast cancer in determining the extent of worker's disability. *Id.* at 322, 720 P.2d at 1263. We wrote, "The statutory construction on which the [lower court's award] depends would eliminate the causation requirement." *Id.* at 323, 720 P.2d at 1264.

(34) Most closely in point to the present case is *Holliday v. Talk of the Town,* 98 N.M. 354, 648 P.2d 812 (Ct.App.1982). The worker had suffered a compensable hand injury. At the time of the injury he had emphysema. The emphysema got worse, until he was unable to work. He claimed entitlement to total disability benefits on the ground that his emphysema, combined with his hand injury, rendered him totally disabled. We rejected the claim that worker's emphysema provided a basis for increasing compensation benefits. *Id.* at 356, 648 P.2d at 814.

(35) I now turn to the law in other states. To be sure, the New Mexico Workers' Com-

pensation Act has a number of unique provisions, which makes reliance on out-of-state cases unwise on many issues. But because the language regarding causation is fairly uniform among workers' compensation statutes, we have typically looked to the law elsewhere for guidance on novel issues with respect to causation. *Reynolds,* our leading case on the question, sets a clear precedent in its approach. Rather than subjecting the language of the New Mexico statute to minute scrutiny, the opinion surveys the cases from around the country. *See also Aragon* (relying on non-New Mexico authority to resolve novel causation question).

(36) With respect to the narrow issue that divides the majority and me, case law in other jurisdictions is scant, but it appears to support my interpretation of New Mexico law. In *Russell v. Industrial Commission,* 23 Ariz.App. 398, 533 P.2d 706, 710 (1975), the court wrote:

> The employee did have some pre-existing conditions not affected by the industrial injury that, because of natural progression, became disabling subsequent to the injury. While he is entitled to collect compensation for all disabilities that were caused by the industrial injury, he is not entitled to collect workman's compensation for any disability that developed through the natural progression of the disease, subsequent to the industrial injury.

Although Arizona has a statute requiring apportionment of disability when the worker was already suffering a disability at the time of the work-related accident, that statute was not applicable in the case. The court relied simply on the statutory requirement of causation. *See id.* 533 P.2d at 708–09.

(37) Adopting a similar view, *Searles v. Johnston Cement,* 101 Or.App. 589, 792 P.2d 449 (1990), held that the worker's disability should be calculated without consideration of his colon cancer, which preexisted the work-related accident but was in remission at the time of the accident. Also relevant is *Giesbrecht v. Board of Review,* 828 P.2d 544 (Utah.Ct.App.1992). In that case the worker broke his leg on the job. Treatment of the fracture revealed a tumor in the leg, which then had to be amputated. The court denied expenses and disability benefits related to the cancer. Although the cancer likely contributed to the fracture, there was no causal connection in the other direction. *Id.* at 547.

(38) Thus, the general rule is that a worker is not entitled to compensation benefits for disability arising from the progression or worsening of a pre-accident condition. The worker is entitled to benefits for disability arising from the combination of (1) the work-related injury and (2) the worker's preexisting condition at the time of the accident. But if the disability increases because of a post-accident worsening of the preexisting condition, that increase is not a natural and direct result of the accident and is therefore not compensable. This rule, however, is subject to an obvious exception. If the work-related accident aggravates the preexisting condition by changing the course of the ailment or its treatment, the disability caused by the aggravated condition is fully compensable, without any apportionment based on the natural course of the condition. *See Reynolds,* 69 N.M. at 255, 365 P.2d at 676. After all, in that situation the worsening is caused, at least in part, by the accident. On the other hand, if such aggravation of the condition is merely transient, there is no basis for considering it in determining permanent disability benefits. *See Arellano v. Industrial Comm'n,* 25 Ariz.App. 598, 545 P.2d 446, 452 (1976); *Hash v. Montana Silversmith,* 256 Mont. 252, 846 P.2d 981, 983–84 (1993).

(39) How does this law relate to the present case? First, following *Reynolds,* even though Worker's myeloma apparently made her more susceptible to back injury, she is entitled to benefits for disability arising out of the injury to her spine from the work-related accident regardless of whether the myeloma made the injury more severe than it would otherwise have been or caused the injury to heal more slowly or less completely than it otherwise would have. (Such benefits also do not depend on whether the accident aggravated the myeloma.) There was no reason for the WCJ to consider what the course of the spinal injury would have been in the absence of Worker's myeloma at the time of the accident.

(40) Second, following both *Reynolds* and *Leo*, in determining Worker's entitlement to permanent-disability benefits the WCJ should consider the combination of Worker's work-related back injury and her myeloma as it existed at the time of the accident.

(41) Thus, I share much common ground with the majority. Where I part company is with respect to the limitations on recovery for the myeloma. The uncontradicted record establishes, and the WCJ found, that after Worker reached maximum medical improvement the state of her myeloma was the same as it would have been if she had not suffered her work-related back injury. Therefore, any increase in Worker's disability arising from the worsening of the myeloma after she suffered her back injury should not be considered in determining her permanent disability benefits.

(42) On this issue the present case is indistinguishable in any material respect from *Holliday*. There, the worker suffered from emphysema at the time of the work-related accident. The emphysema progressed until it rendered the worker incapable of working. We held that the worker was not entitled to benefits resulting from the disabling effects of the emphysema. I see no reason to distinguish *Holliday* on the ground that the emphysema in that case did not affect the worker's hand injury, whereas here the Worker's myeloma caused her back injury to be more severe than it otherwise would have been. The relevant question is whether the progression or treatment of Worker's myeloma was a natural and direct result of the work-related accident. If it was not, our statute does not permit recovery for the increased disability. *See* § 52–1–28(B).

(43) *Reynolds* is not to the contrary. The worker's total permanent disability in that case resulted from the combination of his back injury and his osteoporosis. Nothing in that opinion, however, suggests that worker would be entitled to compensation benefits for post-injury worsening of his osteoporosis. The causal relationship between a preexisting condition and a work-related accident can proceed in either of two directions: (1) the work-related accident may aggravate the preexisting condition or (2) the preexisting condition may cause the work-related injury to be more severe than it otherwise would have been. In the first situation the resulting condition itself is caused, at least in part, by the work-related accident, and compensation is appropriate. But in the second situation the condition has not been affected by the accident. There is no basis in our statute for awarding disability benefits arising from worsening of a preexisting condition when only the causal relationship in the second situation is involved. The worker's compensable disability is only the disability caused by the combination of (1) the preexisting condition at the time of the work-related accident and (2) the work-related injury. No verbal gymnastics can make the *progression* of the condition the "natural and direct result" of the work-related accident.

(44) Also, the WCJ's finding that Worker's accident "aggravated the preexisting multiple myeloma" does not justify consideration of the progression of the myeloma in awarding permanent disability benefits. To begin with, the WCJ's finding apparently refers only to the fact that Worker's back injury increased her pain. There was no evidence that the accident changed the course or treatment of the myeloma. But even accepting the characterization of the increased pain as an aggravation, it was a temporary aggravation. Transient effects of a work-related accident on a preexisting condition during a worker's temporary disability cannot make the natural progression of the condition a "natural and direct result" of the work-related accident. If the progression of the condition from the time of the accident to the time of maximum medical improvement is the same as it would have been if there had been no work-related injury, then any disability arising from the progression is not compensable. To be sure, if a work-related accident continues to aggravate a worker's cancer, we do not apportion the cancer-caused disability between the disability that would have arisen in the absence of the work-related accident and the remaining aggravation of the cancer. But when the aggravation is only temporary and has no permanent effect on the course or treatment of the cancer, the requisite causal

relationship disappears. *See Arellano,* 545 P.2d at 452; *Hash,* 846 P.2d at 983–84.

(45) Because Worker failed in her burden to establish the extent of her disability caused by the accident, the decision of the WCJ could be affirmed. But given the uncertain state of the law at the time of the hearing, the fairer way of proceeding is to remand. I therefore join in remand to the WCJ. I disagree with the instructions for remand, however, to the extent that they suggest that Worker is necessarily entitled to all benefits arising from disability caused by her myeloma. Only the state of her myeloma at the time of her accident (combined with her back injury) should be considered; any disability resulting from post-accident worsening of the disease is not compensable. The WCJ may find it advisable to permit further proceedings concerning the opinions of the physicians who previously provided reports and depositions—the questions that were asked in prior proceedings did not focus on distinctions that may be critical in determining the benefits due Worker. Because of the uncertainties in the applicable law, I do not fault the attorneys in this regard. Nevertheless, the following passage from *Gay v. Workers' Compensation Appeals Board,* 96 Cal.App.3d 555, 158 Cal.Rptr. 137, 141 (1979), bears repeating:

> We do not comprehend how the parties can expect any physician to properly report in workers' compensation matters unless he is advised of the controlling legal principles. Physicians are trained to discover the etiology of an illness. Finding the causes is important in preventive medicine and curing illness once developed. Legal apportionment is not identical to theories of medical causation. Physicians in workers' compensation matters must accordingly be educated by the parties on the correct legal standards of apportionment.

(Citation omitted.)