This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38987**

**ROBERT HERNANDEZ,**

> Worker-Appellee,

v.

**CITY OF CARLSBAD, Self-Insured;
and CCMSI, TPA,**

> Employer/Insurer-Appellants.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Shanon S. Riley, Workers' Compensation Judge**

Chavez Law Firm
Gonzalo Chavez
Roswell, NM

for Appellee

Hale & Dixon, P.C.
Timothy S. Hale
Albuquerque, NM

for Appellants

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** The City of Carlsbad (Employer) and CCMSI (Insurer) appeal the compensation order from the Workers' Compensation Judge (WCJ) awarding Robert Hernandez (Worker) workers' compensation benefits. On appeal, Employer contends: (1) the WCJ erred in relying on the testimony of just one of the three doctors who evaluated Worker because the provider's testimony did not meet the standards for causation opinions under NMSA 1979, Section 52-1-28 (1987); and (2) this Court must reverse and find

that Worker's need for a total knee replacement (TKR) is causally related to an earlier motor vehicle accident and previous surgery, rather than his work accident. For the following reasons, we affirm.

## BACKGROUND

**{2}** There is no dispute that Worker had a preexisting condition with his left knee. In 2007, Worker saw Dr. Marshall Baca following a motor vehicle collision. Dr. Baca performed a physical examination and found that there was pain and popping of the meniscus together with "age-appropriate degenerative changes" to the bearing surface of the left knee joint. Worker underwent surgery to repair a "complex tear of the posterior horn of the medial meniscus" stemming from the motor vehicle accident. Dr. Baca testified that the meniscus removal would not stop the arthritic process and could accelerate the process. Worker was released to return to work with no restrictions on December 11, 2007.

**{3}** On October 26, 2015, Worker was performing his duties as a water meter reader for Employer when he got out of his work vehicle, stumbled, and twisted his left knee. Worker filed a claim for workers' compensation on May 12, 2017. Following the incident, Worker was treated by three physicians: Dr. Earl Latimer, a referral from Employer's first selection health care provider; Dr. Eric Sides, Worker's automatic second selection health care provider; and Dr. Daniel Wascher, who served as the independent medical examination provider. There is no dispute that Worker is a candidate for TKR. Dr. Latimer and Dr. Wascher concluded that Worker suffered a temporary exacerbation of his preexisting left knee arthritis. Dr. Sides concluded the workplace injury was an aggravation of Worker's preexisting left knee condition.

**{4}** After a hearing to determine Worker's benefits, the WCJ found that "[a]s a natural and direct result of the accident of October 26, 2015, to a reasonable degree of medical probability, Worker suffered an aggravation of his pre[]existing left knee osteoarthritis." The WCJ determined that "Dr. Sides' testimony is adequate unequivocal medical testimony sufficient to establish causation pursuant to [Section] 52-1-28 as it has been interpreted by the New Mexico higher courts." Employer moved to reconsider the compensation order, which the WCJ denied. Employer now appeals.

## DISCUSSION

**{5}** "[W]hen a preexisting condition combines with a work-related injury to cause a disability, an employee is entitled to benefits commensurate with the total disability sustained." *Edmiston v. City of Hobbs*, 1997-NMCA-085, ¶ 8, 123 N.M. 654, 944 P.2d 883. "[I]nevitability of disability (or death) plays no role in determining whether a worker's actual disability is causally related to a work-related accident." *Molinar v. Larry Reetz Constr., Ltd.*, 2018-NMCA-011, ¶ 27, 409 P.3d 956.

**{6}** We review the whole record in workers' compensation cases to determine whether substantial evidence supports the WCJ's findings. *See Lewis v. Am. Gen.*

*Media*, 2015-NMCA-090, ¶ 17, 355 P.3d 850. "The [WCJ's] findings will not be disturbed so long as they are supported by substantial evidence on the record as a whole." *Tallman v. ABF (Arkansas Best Freight)*, 1988-NMCA-091, ¶ 15, 108 N.M. 124, 767 P.2d 363. "Substantial evidence is credible evidence in light of the whole record that is sufficient for a reasonable mind to accept as adequate to support the conclusion." *Maez v. Riley Indus.*, 2015-NMCA-049, ¶ 9, 347 P.3d 732 (citation omitted) (text only). It is well recognized in New Mexico that the testimony of a single witness, if found credible by the fact-finder, is sufficient to constitute substantial evidence. *Autrey v. Autrey*, 2022-NMCA-042, ¶ 9, 516 P.3d 207, *cert. granted* (S-1-SC-39371, Aug. 10, 2022). We review the evidence in the light most favorable to the decision, and "[w]e defer to the [WCJ]'s resolution of conflicts in the evidence." *Rodriguez v. McAnally Enters.*, 1994-NMCA-025, ¶ 11, 117 N.M. 250, 871 P.2d 14. "Whole record review is not an excuse for an appellate court to reweigh the evidence and replace the fact[-]finder's conclusions with its own." *Herman v. Miners' Hosp.*, 1991-NMSC-021, ¶ 10, 111 N.M. 550, 807 P.2d 734. Yet, "[w]hile we generally may not weigh the evidence, even under whole record review, such review allows the reviewing court greater latitude to determine whether a finding of fact was reasonable based on the evidence." *Maez v. Riley Indus.*, 2015-NMCA-049, ¶ 10, 347 P.3d 732 (internal quotation marks and citation omitted). This is especially true "when reviewing an issue for which the evidence is documentary in nature," *id.*, as is the case here. In a case where "all or substantially all of the evidence on a material issue is documentary or by deposition, an appellate court may examine and weigh it," *id.* (citation omitted) (text only); because "[w]here the issue to be determined rests upon interpretation of documentary evidence, [appellate courts are] in as good a position as the trial court to determine the facts and draw [their] own conclusions." *Flemma v. Halliburton Energy Servs., Inc.*, 2013-NMSC-022, ¶ 13, 303 P.3d 814 (internal quotation marks and citation omitted). However, even in that case "we will not disturb the WCJ's findings unless they are manifestly wrong or clearly opposed to the evidence." *Maez*, 2015-NMCA-049, ¶ 10 (text only).

**Worker Met His Burden to Establish Causation**

{7}     Section 52-1-28(B), the statute on causation, states:

> In all cases where the employer or his insurance carrier deny that an alleged disability is a natural and direct result of the accident, the worker must establish that causal connection as a probability by expert testimony of a health care provider, as defined [elsewhere in the statute], testifying within the area of his expertise.

"To be compensable, a worker's accident need not be the sole cause of his disability or death; a worker need only show that it was a contributing cause." *Molinar*, 2018-NMCA-011, ¶ 29 (alteration, internal quotation marks, and citation omitted). "Section 52-1-28(B) requires the worker to establish causation as a probability by expert testimony of a health care provider in cases where the employer disputes a causal connection between the accident and the disability." *Molinar*, 2018-NMCA-011, ¶ 29 (internal quotation marks and citation omitted). "Causation exists within a reasonable medical

probability when a qualified medical expert testifies as to his opinion concerning causation and, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action." *Id.* ¶ 28 (internal quotation marks and citation omitted). "New Mexico has adopted the uncontradicted medical evidence rule." *Id.* ¶ 30. "The rule is based on Section 52-1-28(B), which requires the worker to prove causal connection between disability and accident as a medical probability by expert medical testimony. Because the statute requires a certain type of proof, uncontradicted evidence in the form of that type of proof is binding on the trial court." *Molinar*, 2018-NMCA-011, ¶ 30 (alteration, internal quotation marks, and citation omitted). But the uncontradicted medical evidence rule is not applicable when "a conflict arises in the proof, with one or more experts expressing an opinion one way, and others expressing a diametrically contrary opinion, the trier of the facts must resolve the disagreement and determine what the true facts are." *Id.* (internal quotation marks and citation omitted). "However, there must be a rational basis for the WCJ to reject a proposed finding of causation." *Id.* "[W]here the worker has initially established causation through expert testimony, the burden of production should be upon an employer to show that the effects of the preexisting condition are identifiably separate and unrelated." *Id.* (internal quotation marks and citation omitted). "In a case such as this involving a preexisting condition, WCJs must take care not to rely on the fact that the worker's preexisting condition *may* have potentially become just as disabling without an accidental injury in determining whether causation has been established." *Id.* ¶ 27. Accordingly, we first consider whether Worker met his burden under Section 52-1-28. We note that Employer does not dispute that the October 2015 accident caused Worker's left knee injury and that the injury is considered a compensable work-related injury.

**Dr. Eric Sides' Testimony**

**{8}** Dr. Sides diagnosed Worker's condition to a reasonable degree of medical probability as osteoarthritis of the knee, aggravated by an injury at work. During Worker's initial visit on March 2, 2018, Dr. Sides testified that Worker presented with pain "on a scale of [eight] out of [ten] that bothered him when he was walking, kneeling, and sitting for long periods." Dr. Sides conducted a physical examination on March 9, 2018, and found that Worker had left knee medial joint line pain with mild to moderate effusion. An MRI of Worker's Knee indicated subchondral reactive edema. Dr. Sides saw Worker on three other occasions, April 6, May 4, and August 3, 2018, by which point Dr. Sides noted that Worker's symptoms remained unchanged. When asked about his understanding of Worker's 2007 surgical procedure, Dr. Sides testified,

> That there was a complex tear of the medial meniscus that was traumatic—thought to be traumatic . . . because of the large radial tear. At the time of the surgery, there w[ere] underlying degenerative changes, or what you call full-thickness cartilage loss.

When asked if the October 2015 accident changed the course of the treatment, Dr. Sides testified,

According to the records—well my records, my history is different. But according to these records, it appears that the accident caused in a previously asymptomatic or minimally symptomatic condition to become more symptomatic, or accelerated the problem.

**{9}** Based on the medical records and information provided by Worker, Dr. Sides testified that the October 2015 accident increased the pain and discomfort in Worker's knee. When asked if the October 2015 accident increased the overall pain and discomfort in the left knee, Dr. Sides testified, "Well, that's a subjective question. So if he's—if the patient says, 'It increased my pain,' then it did." Dr. Sides' opinion appears to be based on the information provided by Worker about his present symptoms. We, therefore, conclude that Dr. Sides' expert medical testimony meets the requirements of Section 52-1-28 because his testimony establishes: (1) Worker's October 2015 accident caused an aggravation injury of his preexisting osteoarthritis; and (2) this injury 'more likely than not' caused Worker to become disabled. We now turn to Employer's arguments challenging the competency of Dr. Sides' opinion.

**Employer's *Niederstadt* Challenge**

**{10}** Employer contends that Dr. Sides obtained an inaccurate and incomplete history from Worker and did not review any medical records about Worker's previous knee surgery until the morning before his deposition. The WCJ determined that Dr. Sides provided "adequate unequivocal testimony" sufficient to support causation and that the opinions of Drs. Latimer and Wascher were not based on "legal standards as interpreted by the New Mexico higher courts." Worker emphasizes that Dr. Sides was provided medical records that included the 2007 knee surgery well before his deposition. We agree.

**{11}** This Court has stated that in a workers' compensation case, a healthcare provider's "opinion cannot serve as the basis for compliance" with Section 52-1-28 if "pertinent information existed about which [the provider] apparently had no knowledge." *Niederstadt v. Ancho Rico Consol. Mines*, 1975-NMCA-059, ¶ 11, 88 N.M. 48, 536 P.2d 1104. However, "neither *Niederstadt* or [*Sanchez v.*] *Zanio's Foods*[, *Inc.*, 2005-NMCA-134, 138 N.M. 555, 123 P.3d 788,] imposes a requirement that a testifying expert have reviewed all of a worker's prior medical records in order to provide a competent causation opinion." *Molinar*, 2018-NMCA-011, ¶ 40. "[T]he requirement is simply that a health care provider *must be informed about a pertinent prior injury* before he or she can render an opinion as to the cause of a subsequent injury." *Id.* (alteration, internal quotation marks, and citation omitted).

**{12}** Indeed, Dr. Sides testified that during his initial visit with Worker, he had a copy of an operative report about the arthroscopic surgery of the knee referenced in the visit note. Considering the entire record, we determine that Dr. Sides was informed of pertinent information relating to the prior knee surgery. Because of the uncontroverted medical evidence rule, we will determine whether other expert medical testimony

sufficiently contradicted Dr. Sides' causation testimony, thereby permitting the WCJ to choose between competing opinions. *See Molinar*, 2018-NMCA-011, ¶ 35.

**Dr. Earl Latimer and Dr. Daniel Wascher's Testimony**

**{13}**    In support of its position that Worker was not entitled to workers' compensation benefits for the October 2015 injury, Employer presented the testimony of doctors Latimer and Wascher. In her compensation order, the WCJ considered the testimony of each of these experts but chose to disregard their opinions. The WCJ found Dr. Latimer's opinion inadequate because "[w]hen questioned why he characterized the work injury as an exacerbation as opposed to an aggravation, Dr. Latimer responded by saying, 'Maybe I was being optimistic it would get better.'" Although Dr. Latimer placed Worker's injury at maximum medical improvement (MMI) on February 17, 2017, he acknowledged that Worker continued to seek care after that date. When asked if there was any indication that Worker had prior problems with his knee or was symptomatic before March 2015 Dr. Latimer stated that "[m]y understanding was it was not symptomatic." When asked if Worker was still symptomatic a year and a half after the October 2015 accident, Dr. Latimer stated, "Yes." When asked whether his opinion that Worker's MMI had changed given that Worker sought care several times afterward, Dr. Latimer testified, "For the original injury—for lack of a better term, contusion to the knee or exacerbation or aggravation—had reached [MMI] for that injury." Despite these inconsistencies, Dr. Latimer ultimately concluded in a progress note dated January 18, 2016, that Worker suffered an exacerbation of a preexisting condition.

**{14}**    Additionally, Dr. Latimer stated x-rays indicated that "[b]oth knees showed severe degenerative changes with bone[-]on[-]bone contact in the medial compartment or the inside compartment of both knees." Dr. Latimer testified that he understood that "[e]xacerbation means that there's a problem and there's an injury that made the problem worse. An exacerbation, the injury tends to get better and an aggravation, the injury doesn't get better." This is not the standard for establishing an aggravation of a preexisting condition. In *Molinar,* this Court clarified that "[w]orker was not required to show a medical aggravation—i.e., physiological deterioration—of his condition in order to establish he had suffered an aggravation-type injury, but only that the work-related accident aggravated the preexisting condition *by changing the course of the ailment or its treatment.*" 2018-NMCA-011, ¶ 45 (emphases added) (internal quotation marks and citation omitted).

**{15}**    The WCJ similarly found Dr. Wascher's testimony inadequate. Dr. Wascher, like Dr. Latimer, testified,

> I thought that he had a fairly severe osteoarthritis at the time of the work injury, and that the work injury had exacerbated his osteoarthritis symptoms. He had improvement after some treatment with Dr. Latimer and had been placed at MMI, and I agreed with Dr. Latimer's assessment. And then he has had continuing deterioration of his knee symptoms, which

to me was basically an expected progression of his underlying osteoarthritis.

Dr. Wascher observed that Worker was walking with a cane in November 2018 and reported that Worker was experiencing knee pain, buckling sensation, and popping. When asked whether Worker had experienced any independent intervening event to the left knee since the work accident, Dr. Wascher stated, "Not to that knee." For the injury to go from an exacerbation to an aggravation, Dr. Wascher testified that he "would need to see something structurally different" such as a fracture. Accordingly, Dr. Wascher's opinion relies on the lack of structural changes in Worker's knee after the accident, which is contrary to the legal standard established in *Schober v. Mountain Bell Telephone*, 1980-NMCA-113, ¶ 8, 96 N.M 376, 630 P.2d 1231.

**{16}** Consequently, because there was controverted medical evidence presented to the WCJ, she was free to "resolve the disagreement and determine what the true facts are." *Molinar*, 2018-NMCA-011, ¶ 30 (internal quotation marks and citation omitted). Here, the WCJ resolved the disagreement and found that reliable and credible evidence provided by Dr. Sides established that Worker had not sought regular medical treatment for his left knee before the work-related injury he suffered in 2015. After the accident, Worker required cortisone injections in his knees multiple times a year and experienced increased pain and discomfort in his knee in the years following the accident. Dr. Sides thus concluded that as a result of the work-related injury in October 2015 Worker suffered an aggravation of his preexisting injury.

**{17}** Having reviewed the whole record, bearing in mind that in reviewing the decision of the WCJ the function of this Court is not to determine whether evidence contained in the record would support a contrary finding; rather, it is whether scrutiny of the whole record indicates the existence of substantial evidence to support the WCJ's decision, we conclude that the findings set out in the compensation order were supported by substantial evidence. *See Tallman,* 1988-NMCA-091, ¶¶ 8-10.

**CONCLUSION**

**{18}** For the foregoing reasons, the compensation order and order on the motion for reconsideration are affirmed.

**{19}** **IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**SHAMMARA H. HENDERSON, Judge**