771 P.2d 196

Manuel MONTOYA,
Petitioner–Appellant,

v.

NEW MEXICO HUMAN SERVICES DE-
PARTMENT, INCOME SUPPORT
DIVISION, Respondent–Appellee.

No. 10156.

Court of Appeals of New Mexico.

March 7, 1989.

Clark De Schweinitz, Northern New
Mexico Legal Services, Inc., Santa Fe, for
petitioner-appellant.

Jennifer A. Salisbury, Gen. Counsel, Er-
nest O. Pacheco, Susan K. Rehr, Sp. Assist-
ants Gen. Counsel, Human Services Dept.,
Santa Fe, for respondent-appellee.

## OPINION

MINZNER, Judge.

Claimant Manuel Montoya appeals from
a decision of the Human Services Depart-
ment (HSD) terminating his food stamp
benefits. Claimant's wife, Maria, had at-
tempted to make a gift of land to her
children, but she continued to hold legal
title. HSD determined that under these
circumstances, claimant had an accessible
resource valued in excess of the $3,000
permitted for program eligibility. *See* 7
C.F.R. § 273.8(e)(8) (1987). This appeal
raises issues of first impression: whether
an oral gift of real property is enforceable
in New Mexico and, if so, whether land that
is the subject of an enforceable gift is a
resource that is accessible to the donor.
We hold that under the circumstances of
this case, Maria's attempted oral gift of
land to her children created an equitable
cloud on the title, and therefore the land
was not an accessible resource. Thus, we
reverse the agency's decision.

## FACTS

The Montoyas first became eligible for
food stamps in 1985. They did not report
ownership of the land in question when
they applied for benefits. The land is not
adjacent to their home.

In 1986, HSD became aware that Maria
held legal title to unreported land, and
county officials investigated. In 1987,

HSD notified the Montoyas that their food stamp benefits would be eliminated. After requesting a fair hearing on the appeal, Maria quitclaimed her interest in the property to her children, Ysrael and Cruzita.

The evidence offered by the Montoyas and their children at the administrative hearing was not disputed. Thus, the facts on which we rely are primarily based on their testimony and documents.

The land in question had been the subject of an attempted oral gift to Maria by her parents in 1973. Maria's parents told her the property was hers; they were observing longstanding northern New Mexico tradition in orally declaring, prior to their death, their children's portions. In keeping with that tradition, Maria's parents intended the land to be part of Maria's inheritance, but it was to be presently enjoyed. Nevertheless, Maria did not receive a deed to the property until after both her parents had died in 1976. At that time, her brothers quitclaimed their interests to her.

After Maria received legal title, she elected to observe the same tradition her parents had observed, and she told Ysrael and Cruzita that the property belonged to them. Ysrael testified that the attempted oral gift to him occurred in 1976; Cruzita testified that the attempted oral gift to her occurred in 1978. Maria testified that she gave her children the property in 1977. For our purposes, the variation in dates is not important.

Both Ysrael and Cruzita relied upon the oral conveyance and built major permanent improvements on their respective portions of the property. Ysrael took possession, dug a well and built a home; Cruzita built a garage and intends to build a home on her half of the property. Ysrael and Cruzita paid the taxes after the attempted oral conveyances. Claimant and Maria exercised no authority or control over the land.

The hearing officer ruled that the household owned property the value of which exceeded the maximum, because Maria had retained legal title. HSD affirmed the hearing officer.

DISCUSSION

In reviewing an administrative decision, this court will not disturb the decision unless it is found to be "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record as a whole; or (3) otherwise not in accordance with law." NMSA 1978, § 27–3–4(F) (Repl.Pamp.1984); *Landavazo v. New Mexico Dep't of Human Servs., Income Support Div.*, 106 N.M. 715, 749 P.2d 538 (Ct.App.1988). We do not reweigh the evidence in such a review, nor do we resolve any conflicts in evidence. *State Dep't of Transp., Motor Vehicle Div. v. Romero*, 106 N.M. 657, 748 P.2d 30 (Ct. App.1987). If there is substantial evidence on which a reasonable mind would have made such a decision, we should affirm the administrative officer's decision. *Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.*, 101 N.M. 291, 681 P.2d 717 (1984). However, our review must be of the "whole record." *Id.*

Under the whole record standard of review, we consider all the evidence, whether favorable or unfavorable. *Trujillo v. Employment Sec. Dep't*, 105 N.M. 467, 734 P.2d 245 (Ct.App.1987). Recently, this court discussed the standard in the context of reviewing decisions by the workers' compensation administration. The discussion is also relevant in the context of reviewing decisions by HSD.

> The reviewing court starts out with the perception that all evidence, favorable and unfavorable, will be viewed in the light most favorable to the agency's decision. This would, however, not preclude the court from setting aside the agency decision when it cannot conscientiously say that the evidence supporting the decision is substantial, when viewed in the light that the whole record furnishes.

*Tallman v. ABF*, 108 N.M. 124, 129, 767 P.2d 363, 368 (Ct.App.1988).

On appeal, HSD argues that the land does not come under one of the exclusions listed in the regulations, and therefore the resource is accessible for food stamp eligibility determinations. We disagree.

The regulation provides, in relevant part, that resources that are excluded from the determination of the household's resources include:

> Resources having a cash value which is not accessible to the household, *such as but not limited to,* irrevocable trust funds, security deposits on rental property or utilities, property in probate, and real property which the household is making a good faith effort to sell at a reasonable price and which has not been sold \* \* \*. [Emphasis added.]

7 C.F.R. § 273.8(e)(8). *See also* III HSD Income Support Division Program Manual (ISDPM) § FS 412.5 (Effective December 1, 1987) (similar language); *cf.* ISDPM § FS 412.1 (home and adjacent property excluded).

■ The list of exclusions was not intended to be exhaustive. The language clearly contemplates other items with cash values not accessible to the household in addition to the items specifically listed. The regulation should be interpreted as written. *Cf. State v. Elliott,* 89 N.M. 756, 557 P.2d 1105 (1977) (statutes to be given effect as written and, where free from ambiguity, there is no room for construction); *Wilson v. Rowan Drilling Co.,* 55 N.M. 81, 227 P.2d 365 (1950) (a statute that uses the word "including" is not limited in meaning to the things included).

The issue is whether the land in question is an available resource. "Under the State regulations, resources which are not in fact available to meet current needs are not to be considered in determining eligibility for public assistance." *Baca v. New Mexico Health & Social Servs. Dep't,* 83 N.M. 703, 705, 496 P.2d 1099, 1101 (Ct.App.1972). *See also Trujillo v. Health & Social Servs. Dep't,* 84 N.M. 58, 499 P.2d 376 (Ct.App. 1972).

■ The question of availability is ordinarily a question of fact to be proved by substantial evidence. We assume but need not decide that HSD was required to prove availability, that a prima facie case of availability was made by proof of legal title to the resource, and that the resource was not within a specific exclusion. Nevertheless, the resource was not available if a valid competing equitable claim to title existed. *See Cruz v. New Mexico Dep't of Human Servs., Income Support Div.,* 100 N.M. 133, 666 P.2d 1280 (Ct.App.1983); *Russell v. New Mexico Human Servs. Dep't, Income Support Div.,* 99 N.M. 78, 653 P.2d 1224 (Ct.App.1982).

In *Cruz,* claimant's mother transferred legal title to her property to claimant. However, the mother continued to reside on the land, and claimant was not aware that her mother had made the transfer. This court determined that a resulting trust had been created, and that claimant did not have any beneficial interest in the land. *See generally Thomas v. Reid,* 94 N.M. 241, 608 P.2d 1123 (1980) (resulting trust occurs where legal estate is disposed of but the intent appears or is inferred that the beneficial interest is not to be enjoyed with the legal title). Accordingly, the claimant in *Cruz* had no interest in the land that was available to meet her needs.

Similarly, in *Russell,* a case involving termination of both food stamp and AFDC benefits, this court determined that claimant had, in effect, transferred her interest in a house, without formal conveyance by deed, to her children as payment for a debt. The proceeds from a subsequent sale of the house were not a resource available to claimant's household for purposes of determining HSD benefit eligibility, because she had retained no beneficial interest in the house.

Although the facts in *Cruz* and *Russell* are somewhat different from those in the present case, the principle recognized there has application here. In keeping with the accessibility requirements of 7 C.F.R. Section 273.8(e)(8) and ISDPM Section 412.5, claimant's household must have a right to the cash value of the resource in order for the resource to be considered in an eligibility determination. In keeping with *Cruz* and *Russell,* claimant was entitled to show the land in question was not an available resource, because the Montoya children had an equitable claim to title. That brings us to the question of whether the Montoya

children had an equitable claim to title. We conclude they did.

■ Although an oral conveyance of property is generally not enforceable under the statute of frauds, there are exceptions. While this case presents an issue of first impression in New Mexico, our cases clearly recognize other exceptions, such as the enforceability of an oral contract to sell real property. *See, e.g., Candelaria v. Sandoval,* 84 N.M. 387, 503 P.2d 1165 (1972); *Alvarez v. Alvarez,* 72 N.M. 336, 383 P.2d 581 (1963); *Shipp v. Thomas,* 58 N.M. 190, 269 P.2d 741 (1954). Under these cases, an oral contract is given effect when it has been performed to such an extent that it would be inequitable to deny enforcement. *See, e.g., Shipp v. Thomas.*

■ Suits for specific performance of oral promises to give land are governed by the same rules as those for the sale of land. III *American Law of Property* §§ 11.7, 15.25 (A. Casner ed. 1952). The same equitable rules, including promissory estoppel, protect oral gifts as well as oral contracts for the sale of land.

> There is no good reason why a gift should not be subject to the same rules as a sale, and the cases so hold. Thus where under a parol gift of land the donee takes possession and makes improvements in reliance on the gift so it would work a substantial injustice to hold the gift void, the transaction is taken out of the statute of frauds.

*Heuer v. Heuer,* 64 N.D. 497, 503, 253 N.W. 856, 859 (1934) (citations omitted).

It has been said that a parol gift of property is enforceable when there is conclusive proof of words showing that the donor intended to make a gift, that possession was taken in reliance on the gift, and that the donee made permanent and valuable improvements. *Locke v. Pyle,* 349 So.2d 813 (Fla.App.1977). The evidence must be clear and convincing and referable exclusively to the gift. *Id.* Alternatively, it has been said that the circumstances must be such that refusal to enforce the promise would work fraud on the donee. *Tozier v. Tozier,* 437 A.2d 645 (Me.1981). These appear to be alternative theories of enforceability. *See generally* J. Cribbet, *Principles of the Law of Property* 130–31 (2d ed. 1975) (discussing the doctrine of part performance as operating on one of two theories: unequivocal referability or equitable fraud). These theories are recognized in our case law on the enforceability of a contract to sell real property. *See Candelaria v. Sandoval; Alvarez v. Alvarez; Shipp v. Thomas.*

■ We are persuaded that there is no essential difference between the circumstances that make it inequitable to deny enforcement to an oral contract to sell real property and those that make it inequitable to refuse to enforce a promise to give real property. Thus, we hold that if there is proof of the elements of promissory estoppel, an oral gift of real property is enforceable in New Mexico. *Cf. Eavenson v. Lewis Means, Inc.,* 105 N.M. 161, 730 P.2d 464 (1986) (proof of the elements of promissory estoppel is sufficient to support an oral contract for employment, otherwise barred by the statute of frauds).

In the instant case, it is undisputed that Maria made what she believed to be a valid gift, that both Ysrael and Cruzita reasonably relied upon her attempt, and that in reliance thereon they built major permanent improvements on their respective portions. There was also uncontradicted testimony that thereafter claimant and Maria exercised no authority or control over the land and Ysrael and Cruzita paid the taxes. The attempted transfer in this case occurred many years before the Montoyas applied for food stamps; there is no evidence of an intent to defraud. This evidence, if found to be clear and convincing by the trier of fact, would support enforcement of Maria's oral gift under the theory of equitable fraud. *See Tozier v. Tozier.* Under these circumstances, Ysrael and Cruzita had competing, equitable claims to title that made Maria's legal title of doubtful value.

HSD has argued that, because Maria has never denied the gift, this is not a case in which the theory of equitable fraud applies. HSD argues that the principle is intended

to prevent injustice to a donee, not a donor. This argument is without merit.

HSD's decision in effect denies the gift on Maria's behalf. The impact on Ysrael and Cruzita is indirect, but it is articulable. If we were to affirm the decision, Ysrael and Cruzita can retain the legal title their mother transferred, but they will do so at their parents' expense. We have no doubt that this situation would place pressure on the donees either to reconvey the land or to provide their parents with other support. If in fact the land belongs to Ysrael and Cruzita, neither alternative is required of them.

The regulations, and our case law, favor substance over form. There was substantial evidence in the record as a whole that Maria held legal title subject to a claim of equitable title in her children. We conclude the resource was not accessible within the meaning of 7 C.F.R. Section 273.-8(e)(8). In view of our disposition, we do not reach the other issues argued on appeal.

CONCLUSION

The HSD decision in this case is therefore incorrect and should be reversed. We remand for reinstatement of benefits as well as reimbursement for the benefits lost after termination of claimant's benefits. No costs are awarded.

IT IS SO ORDERED.

BIVINS, C.J., and ALARID, J., concur.