803 P.2d 669

**Robert Erasell CASS, Petitioner,**

v.

**TIMBERMAN CORPORATION, Insured, Mountain States Mutual Casualty Company, Insurer, Respondents.**

No. 19240.

Supreme Court of New Mexico.

Dec. 18, 1990.

Rod Dunn, Albuquerque, Winston Roberts-Hohl, Santa Fe, for petitioner.

Dan B. Buzzard, Clovis, for respondents.

William H. Carpenter, Michael B. Browde, Albuquerque, for amicus curiae, New Mexico Trial Lawyers Ass'n.

## OPINION

SOSA, Chief Justice.

This case arises under the Workers' Compensation Act, NMSA 1978, Sections 52-1-1 to -69 (Cum.Supp.1986) [hereinafter Interim Act of 1986], as the disability oc-curred on May 11, 1987. *See Strickland v. Coca–Cola Bottling Co.,* 107 N.M. 500, 760 P.2d 793 (Ct.App.) (applicable law is one in effect on date disability begins), *cert. denied,* 107 N.M. 413, 759 P.2d 200 (1988). We granted the petition of claimant, Robert E. Cass, to issue a writ of certiorari to the court of appeals to review those portions of the opinion that reverse (1) the hearing officer's determination that the employer's insurer acted in bad faith and (2) the award of $10,000.00 attorney fees for representation at the trial level.

The following summarizes the relevant portions of the hearing officer's findings of fact and supplemental findings of fact. On May 11, 1987, claimant was working for Timberman Corporation (employer) as a carpenter, when a scaffolding holding another employee broke and fell, striking claimant. As a result of the accident, claimant suffered a cervical strain with a mild cervical root compression and disabling pain and limitation of motion in the neck. At the time of the incident, Mountain States Mutual Casualty Company (respondent) provided workers' compensation coverage for the employer and began paying compensation benefits immediately until December 14, 1987.

Although the initial emergency room examination and X-rays were negative, claimant did not return to work. He subsequently was treated by a general practitioner, Dr. Oswald Graham, for approximately one month, receiving physical therapy and medication. Claimant missed one appointment. During this time period claimant notified respondent's claims adjuster that in his opinion his condition was not improving. With approval from the claims adjuster, claimant sought treatment from a neurosurgeon, Dr. Haq Babur. After several diagnostic tests, Dr. Babur chose to follow a conservative treatment plan, which resulted in some improvement in claimant's condition between the first and second visit. Dr. Babur's third examination indicated claimant's condition had worsened, at which time a myelogram, and possible surgery, were recommended. Claimant testified he became frightened by

Dr. Babur's recommendation and called the claims adjuster for permission to get a second opinion. The claims adjuster indicated he would get back with claimant.

The next contact claimant had with respondent was on December 14, 1987, when claimant received written notice of termination of benefits on the basis that claimant had failed to follow Dr. Graham's recommendation for physical therapy and medication and Dr. Haq Babur's recommendation for a cervical myelogram and possible surgery. After claimant's benefits were terminated, he sought the care of Dr. Don Fisher who recommended an active physical therapy program aimed at restrengthening and reconditioning claimant's neck rather than surgery—treatment found by the hearing officer to be reasonably necessary to care for and treat claimant's injury.

Other findings of the hearing officer indicate that (1) respondent lacked a reasonable basis for terminating claimant's benefits, (2) respondent acted with disregard for claimant's rights to a hearing on the issue of whether his benefits should be terminated or reduced, (3) respondent acted in bad faith with regard to this claim, and (4) claimant suffered economic loss as a result of the termination of benefits by respondent. The hearing officer concluded that respondents should pay $10,000.00 for claimant's attorney fees, which was found to be a reasonable amount. The hearing officer supported the award of attorney fees primarily with respondent's violation of NMSA 1978, Section 52–1–54(C)(2), and, alternatively, with respondent's technical violation of Rule II(A)(3)(b) of the Payments and Benefits section and Rule V of the Penalties provision of the Workers' Compensation Division's Rules and Regulations.

Section 52–1–54(C)(2) of the Interim Act of 1986 provides for the payment of attorney fees as follows:

A work[er] shall be responsible for the payment of his own attorneys' fees, except that a work[er] shall be entitled to recover a reasonable attorneys' fee from an employer:

\* \* \* \* \* \*

(2) in cases where the hearing officer finds that an employer acted in bad faith with regard to handling the injured work[er's] claim and the injured work[er] has suffered economic loss as a result thereof. As used in this paragraph "bad faith" means conduct by the employer in the handling of a claim which amounts to fraud, malice, oppression or willful, wanton or reckless disregard of the rights of the work[er]. Any determination of bad faith shall be made by the hearing officer through a separate fact-finding proceeding[.]

*See also Sanchez v. Wohl Shoe Co.,* 108 N.M. 276, 771 P.2d 984 (Ct.App.), *cert. dismissed,* 108 N.M. 217, 770 P.2d 539 (1989). Rule II(A)(3)(b) states that "termination or modification of wage benefit payments is allowed prior to order, judgment or a claim being filed \* \* \* [i]f the payor states the reason and the termination notice is accompanied by written instructions about how the claimant may file a claim if the claimant disagrees with the termination \* \* \*." Rule V provides for the payment of attorney fees by the party who "has rejected the recommended resolution [of the pre-hearing officer] without reasonable basis or without reasonable expectation of doing better at a formal hearing."

◼ The court of appeals based its reversal of the hearing officer's finding of bad faith solely upon the determination that it was unsupported by substantial evidence. We disagree and hold that under whole record review substantial evidence exists to support the hearing officer's finding on bad faith. *See Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.,* 101 N.M. 291, 681 P.2d 717 (1984); *Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 767 P.2d 363 (Ct.App.), *cert. denied,* 109 N.M. 33, 781 P.2d 305 (1988). Although the court of appeals also determined that "reasonable minds could differ on whether Section 52–1–51 is mandatory," and requires a determination by a hearing officer to reduce or terminate a claimant's bene-

fits, we need not reach that issue as we find substantial evidence to support the hearing officer's determinations on the issue of bad faith and attorney fees.

■ Under the whole record standard of review, an appellate court shall consider all the evidence, whether favorable or unfavorable. *Montoya v. New Mexico Human Svcs. Dep't,* 108 N.M. 263, 264, 771 P.2d 196, 197 (Ct.App.1989). If substantial evidence exists upon which a reasonable mind would have made such a decision, the court should affirm the administrative officer's decision, without reweighing the evidence or resolving any conflicts in evidence. *Id.* In the present case, our review of the whole record indicates that claimant satisfied his burden of showing bad faith on the part of respondent as defined in Section 52–1–54(C)(2). *See Sosa v. Empire Roofing Co.,* 110 N.M. 614, 616, 798 P.2d 215, 217 (Ct.App.1990) ("It is claimant's burden to show the bad faith on the part of respondent.").

As stated previously, the findings of fact reveal that respondent's alleged basis for the termination of benefits was claimant's failure to follow Dr. Babur's recommendation for a cervical myelogram and possible surgery, and his failure to follow Dr. Graham's recommendation for physical therapy and medication. In reaching the determination that respondent acted in bad faith, the hearing officer had before it the testimony of claimant's treating physicians and respondent's claims adjusters who had been handling claimant's case. The evidence established that claimant attempted to follow Dr. Graham's directions, but that in claimant's opinion, Dr. Graham was not providing adequate medical care for the injury suffered. The evidence also established that claimant contacted the claims adjuster to express his dissatisfaction with Dr. Graham and that the adjuster suggested he seek the services of a neurologist, Dr. Babur. Dr. Babur's diagnosis revealed that claimant had neurological damage to the nerve root. Dr. Graham testified that as a general practitioner, he did not perform any tests designed to elicit information pertaining to a neurological deficiency as he had no expertise in treating neurological injuries. He further testified that had it been indicated to him that a patient possibly had suffered neurological damage, he immediately would have discontinued physical therapy and referred the patient to a neurosurgeon.

Claimant contends that respondent's bad faith was demonstrated by its unilateral termination of benefits in response to claimant's request for approval to receive a second medical opinion regarding the possibility of having a myelogram or surgery performed—medical procedures of a major character and attended by serious risk. *See, e.g., Aranda v. D.A. & S. Oil Well Servicing, Inc.,* 98 N.M. 217, 647 P.2d 419 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982) (myelogram is medical or surgical treatment within meaning of Section 52–1–51 of Worker's Compensation Act). Claimant did not refuse to submit to the myelogram or surgery, but simply wanted the opinion of another physician, and called the claims adjuster regarding his concern as he had done in the past.

Based upon our review, we hold that the hearing officer's finding on bad faith is supported by substantial evidence. We further hold that respondent's conduct regarding this claim rose at least to a level of reckless disregard of claimant's rights under the Interim Act of 1986. Accordingly, we affirm the hearing officer's determination on the issue of bad faith and the award of attorney fees, and reverse that portion of the court of appeals' opinion to the contrary. Moreover, pursuant to the authority in NMSA 1978, Section 52–1–54(E), of the Interim Act of 1986, we award claimant costs and attorney fees in the amount of $1,000.00 for the proceedings in this court, and that respondent shall be responsible for the payment thereof.

IT IS SO ORDERED.

RANSOM, BACA, MONTGOMERY and FRANCHINI, JJ., concur.