2006-NMCA-101

142 P.3d 29

**Patrick Shaun ROBERTSON, Worker–Appellant,**

v.

**ROCKY MOUNTAIN METALS, INC. and New Mexico Mutual Casualty Company, Employer/Insurer–Appellees.**

No. 25,998.

Court of Appeals of New Mexico.

June 20, 2006.

Certiorari Denied, No. 29,920, Aug. 14, 2006.

Annie–Laurie Coogan, Santa Fe, NM, for Appellant.

Miller Stratvert, P.A., Timothy R. Briggs, Kelsey D. Green, Albuquerque, NM, for Appellees.

## OPINION

SUTIN, Judge.

{1} Worker Patrick Shaun Robertson contends that the workers' compensation judge (WCJ) erred in determining that Worker was not an employee of Rocky Mountain Metals, Inc. and therefore not entitled to workers' compensation benefits. Worker contends that the evidence requires the conclusion that, based on his employee status and also based on an alter ego theory of liability, Rocky Mountain must provide compensation benefits. We disagree and affirm.

## BACKGROUND

{2} Rocky Mountain, a window and door manufacturer, was incorporated as a New Mexico corporation in 1988. Its owners are Michael Walton and his wife, Mark Hallgren, Mike Hallgren, and Robert Walton and his wife. Sierra Transportation, Ltd., a hauling operation, was formed as a Texas limited partnership in 1999. Sierra Transportation's general partner was Sierra Operations, Inc., a Texas corporation, owned by Mark Hallgren, Michael Walton, Michael Hallgren, and Robert Walton, who were also the limited partners of Sierra Transportation. Rocky Mountain was insured pursuant to the workers' compensation laws for insurance claims; Sierra Transportation was not.

{3} Before Sierra Transportation was formed, Rocky Mountain hired independent carriers to deliver Rocky Mountain's products. These private carriers each had their own trucking business, as well as their own trucks and hauling charges. After Sierra Transportation was formed, Rocky Mountain used it for product delivery but also continued to use other carriers. The carrier selected to haul a particular load was usually dependent on the weight of the load to be shipped. As with the independent carriers, the only input Rocky Mountain had in regard to shipping its product was when and where the shipment was to be delivered. Each carrier, including Sierra Transportation, was paid through invoices submitted to Rocky Mountain. Sierra Transportation owned two trucks and two flatbed trailers which were parked on Rocky Mountain's premises, as were the trucks and trailers of other carriers Rocky Mountain utilized. Rocky Mountain's product was loaded on trailers by Rocky Mountain employees. Sierra Transportation's trucks displayed magnetic signs identifying them as belonging to Sierra Transportation. Sierra Transportation's phone and fax numbers and address were the same as those of Rocky Mountain. The phone was answered by saying "Rocky Mountain Metals."

{4} Rocky Mountain maintained its own liability and workers' compensation insurance, paid its employees with checks issued by Rocky Mountain from a Rocky Mountain bank account, and annually filed state and federal income tax returns relating only to Rocky Mountain. It paid for all costs related to the shipping of its product from its own bank account, and did not employ drivers, delivery staff, or any other employees used to ship its finished product. It did not own trucks, trailers, or other equipment used to ship its finished product. It did not pay any road taxes, fuel costs, maintenance costs, or insurance costs, for Sierra Transportation's hauling equipment. Sierra Transportation and Rocky Mountain funds were not commingled.

{5} Two persons conducted the daily operations of Sierra Transportation. They were a Rocky Mountain employee, Lucille Arvizo, and a Rocky Mountain and Sierra Transportation owner, Michael Walton. The daily office operations of Sierra Transportation were conducted on Rocky Mountain's premises. Michael Walton performed ninety-five percent of the day-to-day operations and management of Sierra Transportation. His activities on behalf of Sierra Transportation were separate and distinct from those performed in his employment at Rocky Mountain. Arvizo was employed by Sierra Transportation as an independent bookkeeper to maintain its books and to handle various duties on its behalf. Arvizo performed bookkeeping for several independent companies. She performed work for Sierra Transportation at times during her working hours as an employee of Rocky Mountain, and also outside of her Rocky Mountain working hours, the same as she did with respect to her other clients. Sierra Transportation filed its own state and federal income tax returns, maintained its own separate bank account, owned and maintained its own property consisting of trucks and trailers, and paid for all costs and expenses it incurred through its operations.

{6} Worker was hired by Sierra Transportation to drive its trucks and haul Rocky Mountain's finished product. He was an experienced truck driver. When he was hired, he informed Sierra Transportation that he had other driving opportunities and would not always be available to drive for Sierra Transportation. When he was hired, there

was no discussion of workers' compensation insurance. Worker drove Sierra Transportation's trucks thirty-three times before having the accident for which he seeks benefits. Sierra Transportation had three or four regular drivers. Worker and the other drivers were paid by the mile upon returning from a trip; payments were made with Sierra Transportation checks drawn on its own bank account. Sierra Transportation did not withhold taxes from Worker's pay and issued him a 1099 at the end of the year. Sierra Transportation treated Worker as contract labor for income tax purposes. Sierra Transportation paid all of the road taxes, maintenance, and vehicle insurance for the trucks.

{7} The WCJ found that Worker was not an employee of Rocky Mountain but rather was an employee of Sierra Transportation. The WCJ specifically found:

7. Worker was an employee of Sierra Transportation, Ltd. by reason that: Sierra Transportation, Ltd. was in the regular business of transporting materials; Worker was a driver engaged in the transportation of materials; Worker was required to have a special license to transport Sierra Transportation, Ltd. materials; Sierra Transportation, Ltd. supplied the motor vehicle and trailer used by and in which Worker was injured; Worker provided hand tools and a CB radio; Worker was paid by check by Sierra Transportation, Ltd., without tax deductions; Worker delegated some driving responsibilities to his then wife; [W]orker's compensation was by miles driven; Sierra Transportation, Ltd. communicated expectations of when loads should arrive at their destinations; the right to terminate the working relationship was bilateral, without liability; Sierra Transportation, Ltd. used a small group of drivers regularly; Sierra Transportation, Ltd. shipped materials in their own vehicles, and did not transact business with other carriers.

. . . .

9. Rocky Mountain Metals, Inc. was an entity engaged in the manufacture

and sale of metal doors. Any involvement by Rocky Mountain Metals, Inc. in transportation of materials was incidental to its usual and common business of door manufacturer.

10. Rocky Mountain Metals, Inc. had used other carriers other than Sierra Transportation, Inc., Ltd. to transport its product to end users.

11. Rocky Mountain Metals, Inc. and Sierra Transportation, Inc., Ltd. were and are separate business entities.

The WCJ concluded that Worker was not entitled to benefits and dismissed Worker's complaint.

## STANDARD OF REVIEW

{8} We employ a whole record standard of review. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 127, 767 P.2d 363, 366 (Ct.App.1988). We canvass all of the evidence, favorable and unfavorable, bearing on the administrative agency's decision. *Id.* at 128, 767 P.2d at 367. We view the evidence in the light most favorable to the decision; however, we do not view favorable evidence with total disregard to contravening evidence. *Herman v. Miners' Hosp.*, 111 N.M. 550, 552, 807 P.2d 734, 736 (1991). Yet we disregard evidence that has little or no worth. *Tallman*, 108 N.M. at 128, 767 P.2d at 367. "[O]nce we find enough substantial evidence to support the [WCJ's] finding, our task is complete and we look no further." *Id.* at 127, 767 P.2d at 366. We will not disturb the decision if evidence exists which a reasonable mind would accept as adequate to support the decision. *Flint v. Town of Bernalillo*, 118 N.M. 65, 67, 878 P.2d 1014, 1016 (Ct.App.1994). Substantial evidence exists in the whole record when the reviewing court is satisfied that the evidence demonstrates the reasonableness of the decision. *Herman*, 111 N.M. at 552, 807 P.2d at 736; *Tallman*, 108 N.M. at 128, 767 P.2d at 367. "As long as substantial evidence supports the findings of the hearing officer, an appellate court will not disturb those findings on appeal." *Herman*, 111 N.M. at 552, 807 P.2d at 736.

## DISCUSSION

{9} Worker's position is that "[t]he facts in evidence overwhelmingly support a decision that as a matter of law [Rocky Mountain] was an employer of Worker." In addition to interlocking owners and the dual roles of Arvizo and Walton, Worker summarizes the facts that support this position as follows: Sierra Transportation was set up with no employees, yet ran a daily business hauling Rocky Mountain's finished product; Sierra Transportation was physically and financially dependent on Rocky Mountain's business and its sole purpose was to deliver Rocky Mountain's product; Worker was hired and instructed by Rocky Mountain personnel, was paid by Rocky Mountain employees, and on some occasions received checks in Rocky Mountain envelopes.

{10} Worker does not challenge the WCJ's finding that Worker was an employee of Sierra Transportation. He cites law indicating that more than one entity can be an employer of a worker and that the issue is that of control of the work. *See, e.g., Harger v. Structural Servs., Inc.,* 121 N.M. 657, 666, 916 P.2d 1324, 1333 (1996); *Shipman v. Macco Corp.,* 74 N.M. 174, 176–78, 392 P.2d 9, 11–12 (1964); *Lujan v. Payroll Express, Inc.,* 114 N.M. 257, 260, 837 P.2d 451, 454 (Ct.App. 1992). The issue of an entity's control of work is usually fact intensive, requiring the WCJ to weigh the evidence and draw rational inferences from the evidence. In the present case, we have no doubt that the WCJ did just that and that substantial evidence supported the WCJ's ultimate findings.

■ {11} It is evident from the evidence as a whole that the WCJ's findings that Worker was employed by Sierra Transportation and was not employed by Rocky Mountain were supported by substantial evidence. The entities were separate entities, paying their own taxes. Sierra Transportation, not Rocky Mountain, owned the trucks and trailers. The entities had separate bank accounts. Sierra Transportation treated Worker as an independent contractor. Worker drove Sierra Transportation's trucks. He was paid by Sierra Transportation with Sierra Transportation checks drawn on Sierra Transportation's bank account. Worker even considered himself the employee of the entity that signed his paychecks. Rocky Mountain did not hire or pay Worker. Rocky Mountain did not engage in hauling; it hired trucking companies to do that work. The trucking companies, including Sierra Transportation, billed Rocky Mountain for hauling services. Rocky Mountain only told Sierra Transportation drivers when and where to deliver Rocky Mountain's product.

{12} While there was evidence linking Rocky Mountain and Sierra Transportation, the WCJ weighed the evidence and concluded that Worker was not an employee of Rocky Mountain. The evidence did not require a conclusion, as a matter of law, that Worker was an employee of Rocky Mountain. Substantial evidence supported the WCJ's findings. We will not reweigh the evidence. We view the evidence in the light most favorable to the WCJ's decision that Worker was not an employee of Rocky Mountain.

■ {13} Rocky Mountain also points out that Worker failed to show where, in the proceedings below, he preserved his argument that Rocky Mountain was the alter ego of Sierra Transportation. Worker's attempt before the WCJ to integrate Rocky Mountain and Sierra Transportation was to show that Rocky Mountain in some manner controlled his work, not to impute workers' compensation responsibility and liability based on an alter ego theory. He did not alert the WCJ to a separate alter ego theory. Even were he to have preserved this issue, Worker failed to produce sufficient evidence to establish an alter ego circumstance as required in our case law. *Cruttenden v. Mantura,* 97 N.M. 432, 434–35, 640 P.2d 932, 934–35 (1982) (stating the factors required to establish alter ego).

## CONCLUSION

{14} **We affirm.**

{15} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and CYNTHIA A. FRY, Judges.