This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JOHN W. KEMPER,**

     Worker-Appellant,

v.                                                                                          **NO. 28,923**

**LESLIE INVESTMENT PROPERTIES and**
**WESTPORT INSURANCE,**

     Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Gregory D. Griego, Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Worker-Appellant

Maestas & Suggett, P.C
Paul Maestas
Albuquerque, NM

for Employer/Insurer-Appellees

**MEMORANDUM OPINION**

**VANZI, Judge.**

John Kemper (Worker) was injured in the course of his employment with Leslie Investment Properties (Employer). Worker filed a claim with the Workers' Compensation Administration (WCA), and the Workers' Compensation Judge (WCJ) issued a compensation order on August 14, 2008. Worker appeals the WCJ's findings in that order regarding Worker's residual physical capacity under NMSA 1978, Section 52-1-26.4 (2003) and Worker's impairment rating under NMSA 1978, Section 52-1-24 (1990). We affirm.

**BACKGROUND**

On November 26, 2004, Worker sustained a workplace injury during the course of his employment with Employer. The parties stipulated that Worker's injury occurred when he was lifting "a bag of wet cement" and that the injury he sustained affected his lumbar spine, testicles, groin and hips. Worker was awarded compensation for this injury under the Workers' Compensation Act. After a formal hearing, the WCJ issued its compensation order, which incorporated a benefit analysis. That analysis included a determination of Worker's residual physical capacity under Section 52-1-26.4, and Worker's impairment rating under Section 52-1-24. Worker appeals these two determinations.

**DISCUSSION**

**Standard of Review**

"We review workers' compensation orders using the whole record standard of review." *Leonard v. Payday Professional*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177. Under this standard, we canvass "all the evidence bearing on a finding or decision, favorable and unfavorable, in order to determine if there is substantial evidence to support the result." *Id.* (internal quotation marks and citation omitted). We do not "substitute our judgment for that of the administrative agency, and we view all evidence, favorable and unfavorable, . . . in the light most favorable to the agency's decision." *Id.* (alterations, internal quotation marks and citation omitted). We will affirm the agency's decision if, after taking the entire record into consideration, there is evidence—evidence a reasonable mind would accept as adequate—that supports the conclusion reached. *Id.* However, "[w]e review the WCJ's application of the law to the facts de novo." *Id.*

**Residual Physical Capacity**

Worker argues that the WCJ erred in determining that his residual physical capacity is light rather than finding him to be only capable of sedentary activity. At the outset, as Employer correctly observes, our standard of review prohibits us from reweighing the evidence presented to the WCJ. *See Cass v. Timberman Corp.*, 111 N.M. 184, 187, 803 P.2d 669, 672 (1990). Rather, our task is merely to inquire whether the WCJ's determination that Worker was capable of light activity was based on substantial evidence which a reasonable mind would accept. *Id.* After reviewing

3

the record, we are persuaded that the WCJ's decision that Worker was capable of light activity was based on substantial evidence, i.e., the professional medical opinions of Dr. Reeve and Dr. Diskant.

The WCJ found that "Worker is medically restricted, after medical stabilization, to activities which are at a light level of exertion" as the term "light" is defined in Section 52-1-26.4(C)(3). In reaching this conclusion, the WCJ considered Worker's testimony regarding his physical limitations following the accident and the medical assessments of Worker provided by doctors Anthony Quay, M.D., Barry M. Diskant M.D., and Anthony Reeve, M.D. The doctors' assessments of Worker were not in complete agreement. As we discuss below, Drs. Reeve and Diskant both concluded that Worker was capable of light activity. Dr. Quay, on the other hand, concluded that Worker should be restricted to sedentary activity.

Dr. Diskant assessed Worker on October 18, 2007. That assessment was comprehensive. Dr. Diskant's report is fifty pages in length, provides a detailed account of Worker's medical history, and an in-depth account of the variety of procedures Worker has undergone and medications Worker has taken to address his numerous medical problems, including his lower back problems, which arise from Worker's workplace injury and his preexisting lower back condition. Several paragraphs of Dr. Diskant's report are dedicated to Worker's ability to walk, stand, squat, and perform other basic functions. Dr. Diskant's report also addressed

4

Worker's range of motion. Most critically, Dr. Diskant specifically noted that Worker was the subject of a functional capacity evaluation (FCE) on April 28, 2006.[1] During that evaluation, Worker was capable of lifting twenty-eight pounds a distance of thirty to fifty-four inches. Dr. Diskant commented that, based on the results of the FCE, Worker demonstrated an ability to perform safely within the light activity category. Dr. Diskant further noted that Worker saw a Dr. Genovese-Elliott on May 2, 2006, and after reviewing the FCE, she also concluded that Worker was capable of light activity. As a result of his assessment of Worker, Dr. Diskant concluded that Worker was capable of returning to light activity.

Dr. Reeve evaluated Worker on December 5, 2005. Dr. Reeve's evaluation of Worker, though not nearly as comprehensive as Dr. Diskant's, also provided a full background of Worker's ailments, including Worker's workplace injury, and the

---

[1] Worker alleges in a footnote in his brief in chief that the FCE report was inadmissible at trial as the health care provider who carried out the FCE was not an authorized health care provider under the Workers' Compensation Act. Worker failed to indicate whether this argument was advanced during the WCA proceedings, *see Campos Enter., Inc. v. Edwin K. Williams and Co.*, 1998-NMCA-131, ¶ 12, 125 N.M. 691, 964 P.2d 855 ("This Court reviews the case litigated below, not the case that is fleshed out for the first time on appeal.") (alterations and internal quotation marks omitted), and how this argument was preserved for appeal. *See Robertson v. Rocky Mountain Metals, Inc.*, 2006-NMCA-101, ¶ 13, 140 N.M. 261, 142 P.3d 29 (observing that we shall not review arguments not preserved during WCA proceedings). These two issues aside, we explicitly held in *Lopez v. City of Albuquerque*, 118 N.M. 682, 683-84, 884 P.2d 838, 839-40 (Ct. App. 1994) that an authorized health care provider may rely on inadmissible health care records during WCA proceedings and those documents may be admitted into the record to demonstrate that reliance.

5

treatments employed to remedy those ailments. In his report, Dr. Reeve evaluated Worker's range of motion and made observations regarding Worker's physical health and physical capabilities. As a result of this examination, Dr. Reeve also concluded that Worker was capable of returning to light activity. We are persuaded that a reasonable mind could conclude, based on these reports, that Worker was capable of light rather than sedentary activity.

The evidence in the record unfavorable to the WCJ's finding—Dr. Quay's testimony and Worker's own testimony—is insufficient to alter this conclusion. Worker urges us to afford "the greatest weight" to Dr. Quay's opinion in assessing his residual physical capacity. We decline to do so. *See Cass*, 111 N.M. at 187, 803 P.2d at 672 (stating that the Court is not to reweigh the evidence or resolve any conflicts in evidence). Although Dr. Quay was Worker's primary treating physician, his medical report was brief and his conclusion that Worker is incapable of lifting more than ten pounds is contradicted by Dr. Diskant and Dr. Reeve's findings. Dr. Quay testified that he was not familiar with the AMA Guides and has never assessed impairment according to those guidelines. Dr. Quay also testified that he was not familiar with the concept of maximum medical improvement and could not answer whether Worker's lower back problems ever reached such improvement. Finally, Dr. Quay's classification of Worker as sedentary in both January 2005 and June 2006, was based only on his assessment of Worker's description of his pain. By the time of his

6

deposition in May 2007, Dr. Quay was unwilling to say what restrictions and impositions he would impose on Worker and stated instead that he would leave that up to the "consulting physicians."

We are unpersuaded by Worker's contention that his own testimony rebuts the findings of Dr. Reeve and Dr. Diskant. Worker's testimony was merely a first person account of what he told Dr. Diskant and Dr. Reeve. Worker does not argue that he withheld information from Dr. Diskant and Dr. Reeve or that Dr. Diskant and Dr. Reeve based their opinions on erroneous information. Moreover, as explained in greater detail below, Worker's own testimony contradicts Dr. Quay's assessment. Accordingly, our review of the whole record indicates that substantial evidence existed upon which a reasonable mind was able to determine that Worker's residual physical capacity is light duty in nature.

We also disagree with Worker's reading of *Slygh v. RMCI, Inc.*, 120 N.M. 358, 901 P.2d 776 (Ct. App. 1995), and *Medina v. Berg Const., Inc.*, 1996-NMCA-087, 122 N.M. 350, 924 P.2d 1362, and we are not persuaded that these cases support Worker's contention that the WCJ erred in reaching the conclusion that he was capable of light activity.

*Slygh* is effectively a mirror image of the present matter. In that case, the employer contested the WCJ's determination that the employee was capable of sedentary residual duty. *Slygh*, 120 N.M. at 359, 901 P.2d at 777. The employer,

7

relying on the testimony of the employee's doctor who had evaluated the employee, argued that the WCJ was bound by the doctor's opinion concluding that the employee was capable of light duty. *Id.* We disagreed and held that the WCJ was entitled to make an independent judgment regarding the employee's residual physical capacity. *Id.* The judge was free to consider the testimony of the doctor in the same manner, and to the same degree, as any other expert testimony presented. Thus, it was not improper for the WCJ to consider the testimony of both the doctor and the employee to reach the conclusion that the employee had a sedentary residual physical activity. *Id.* at 360-61, 901 P.2d at 778-79 ("Based on the testimony of both [the doctor] and [the worker], the judge could have reasonably concluded that [the worker] did not fall within the light residual physical capacity category"). Accordingly, *Slygh* merely stands for the proposition that the WCJ is not required to defer to any single opinion and may reject an expert opinion in whole or in part when reaching a finding regarding a worker's residual physical capacity. The WCJ is charged with assessing all of the evidence presented and is required to reach a conclusion reasonably supported by that evidence. As we have explained, the WCJ's finding that Worker is capable of light activity in this case was reasonable based on the evidence before it.

In *Medina*, we held, as Worker observes, that "a worker must be able to meet all the lifting requirements for each [residual physical capacity category] in order to be classified [as part of] that [category]." *Medina*, 1996-NMCA-087, ¶ 27. Light

8

duty activity contemplates the following lifting activity: "the ability to lift up to twenty pounds occasionally or up to ten pounds frequently." Section 52-1-26.4(C)(3). Worker claims that he is unable to satisfy these lifting requirements because he cannot bend. Lifting ten pounds frequently, according to Worker, requires bending and because he cannot bend, he cannot lift anything frequently. Worker provides no authority for this linkage. Regardless of whether or not Worker can bend, however, the record reveals that Worker testified during the WCA proceedings as follows: "I can lift 20 pounds right now . . . I got strong arms." Furthermore, the FCE referenced in Dr. Diskant's report, which Dr. Diskant relied upon to conclude that Worker was capable of returning to light activity, indicated that worker was capable of lifting a degree of weight within the light activity category. We are satisfied that the WCJ's conclusion that Worker was capable of fulfilling the lifting requirements of the light activity category was reasonably supported by the record.

Worker then raises what appears to be a second *Medina* argument. The lifting requirements aside, Worker also claims that he is incapable of walking or standing to a significant degree and thus, is incapable of fulfilling the type of activity contemplated by the light activity category. The second half Section 52-1-26.4(C)(3) states:

> Even though the weight lifted may be only a negligible amount, a job is in this category when it requires walking or standing to a significant

degree or when it involves sitting most of the time with a degree of pushing and pulling of arm or leg controls or both[.]

*Id.* By its plain language, the light activity designation does not merely contemplate activities requiring one to stand to a significant degree. It also contemplates activities involving sitting most of the time. Accordingly, whether Worker can stand to a significant degree is not dispositive of whether he is capable of light activity. The minimum threshold is whether he is capable of "sitting most of the time" and simultaneously capable of "pushing and pulling arm or leg controls." *Id.* Worker does not contend that he is incapable of such activity. Based on the foregoing, we see no basis to conclude that *Medina* undermines the WCJ's conclusion that Worker is capable of light activity.

**Impairment Rating**

We next address Worker's contention that the WCJ's finding with regard to Worker's impairment rating was erroneous. Because the issue of Worker's impairment rating relates to other injuries suffered by Worker, we review the facts regarding his medical history in more detail.

In addition to the November 26, 2004 injury at issue in this case, Worker was involved in three different accidental injuries. First, in December 2000, Worker began to experience the gradual onset of pain in his lower back which continued to worsen significantly over time. He ultimately underwent lumbar surgery by Dr. Philip Shields

in April 2001 to repair several disc abnormalities. The accident on November 26, 2004, was therefore the second injury to Worker's lumbar spine. Worker also sustained two injuries to his neck. On September 10, 2002, Worker sustained an injury to his cervical spine as the result of a motor vehicle accident. Most recently, on July 27, 2005, Worker re-injured his neck in an accident he sustained while working for Lithia Motors of Santa Fe, Inc. (Lithia).

The WCJ found that "Worker has a permanent physical impairment of 19% of the whole person[.]" The WCJ based this rating on Dr. Diskant's assessment that Worker's workplace injury and his gradual onset injury combined to result in a 19% impairment rating. Worker does not challenge this finding. Dr. Diskant described Worker's impairment as affecting Worker's lower back and attributed Worker's lower back impairment to the two events described above: (1) Worker's workplace injury, and (2) the preexisting gradual onset injury affecting Worker's lower back which required surgery in 2001.

In his report, Dr. Diskant also indicated that Worker suffers from a separate and additional 23% impairment which affects Workers neck and was caused by the two motor vehicle accidents Worker experienced. Dr. Diskant commented in his report that if Worker's workplace injury impairment was combined with Worker's multiple automobile accident impairment, Worker's total impairment rating would be 38%. However, Dr. Diskant concluded that it would be error to combine the two impairment

ratings as the impairment resulting from the automobile accidents "neither caused, aggravated, exacerbated, accelerated nor precipitated" the impairment caused by the workplace injury.

Worker asserts that the WCJ should have found that his impairment rating was 38%. This figure is based on Worker's assertion that his 19% impairment rating should have been combined with the 23% impairment rating Dr. Diskant attributed to Worker's neck injuries which Worker sustained as a result of two automobile accidents. We reiterate that we employ the whole record standard of review when evaluating the WCJ's findings and review the WCJ's application of the law to the facts de novo. *Leonard*, 2007-NMCA-128, ¶ 10.

This Court has previously held that "when a preexisting condition combines with a work-related injury to cause a disability, an employee is entitled to benefits commensurate with the total disability sustained[.]" *Edmiston v. City of Hobbs*, 1997-NMCA-085, ¶ 8, 123 N.M. 654, 944 P.2d 883; *see also Reynolds v. Ruidoso Racing Ass'n, Inc.*, 69 N.M. 248, 258, 365 P.2d 671, 678 (1961) (ordering workers' compensation judge to combine the degree of a worker's injury arising from his Osteoporosis, a disease which weakens the bones, with the degree of a worker's injury arising from his workplace spinal injury). This rule—which we have previously referred to as the "enhanced disability rule"—stems from the general principle that "the employer takes the employee as it finds that employee." *Smith v. Arizona Public*

*Service Co.*, 2003-NMCA-097, ¶ 11, 134 N.M. 202, 75 P.3d 418 (internal quotation marks and citation omitted). Worker asserts, in the present matter, that the neck injuries he sustained as a result of his motor vehicle accidents constituted a preexisting condition which combined with his back injury resulting in one collective disability. We evaluate this claim in light of the guidance we provided in *Edmiston* and *Smith*.

In *Smith*, we held that the "appropriate standard for determining compensation [when a worker invokes the enhanced disability rule] is simply whether or not the preexisting condition and the workplace injury combined to produce an overall condition of disability." 2003-NMCA-097, ¶ 12 (internal quotation marks and citation omitted). This standard was drawn from *Edmiston* where we made it clear that, in resolving whether the preexisting condition combined with the workplace injury, the workers' compensation judge was required to resolve two questions: (1) whether the disability is the natural and direct result of the workplace injury; and (2) whether the workplace injury aggravated or accelerated the preexisting condition, or produced combined effects with the preexisting condition, to produce the disability. *Edmiston*, 1997-NMCA-085, ¶¶ 15-23.

We further clarified in *Edmiston*, regarding the first prong of this two prong approach, that "[w]hen . . . an employer challenges whether the disability is the natural and direct result of the accident, a worker must establish a causal connection between the two to a medical probability. The worker must meet this burden of persuasion by

13

producing expert medical testimony as to causation." *Id.* at ¶ 16 (internal citations omitted). This requirement, we explained, derives from the settled principle that "the Workers' Compensation Act does not allow an award of compensation benefits based on later injuries or illnesses that are wholly unrelated to either the employment or the original compensable injury." *Leo v. Cornucopia Rest.*, 118 N.M. 354, 359, 881 P.2d 714, 719 (Ct. App. 1994); *see*, *e.g.*, *Clavery v. ZIA Co.*, 104 N.M. 321, 322-23, 720 P.2d 1262, 1263-64 (Ct. App. 1986) (holding that worker's subsequent breast cancer diagnosis could not be combined with her workplace back injury for purposes of assessing worker's compensation benefits); *Holliday v. Talk of the Town Inc.*, 98 N.M. 354, 356, 648 P.2d 812, 814 (Ct. App. 1982) (holding that worker's subsequent emphysema diagnosis could not be combined with his workplace hand injury for purposes of assessing worker's compensation benefits).

Based on the principles articulated above, we disagree with Worker's contention that the WCJ erred in rejecting his request to combine the impairment rating related to his back injury with the impairment rating related to his neck injury. Employer has challenged whether Worker's neck injury is the natural and direct result of Worker's workplace injury and has provided expert testimony that it is not. Accordingly, under *Edmiston*, Worker was required to submit expert medical testimony that the impairment affecting his neck in fact had a causal connection to the workplace injury. Worker has not directed us to any such evidence in the record and

14

Employer asserts that there was none. Worker merely avers on appeal that both his back and neck impairments affected his ability to bend. Thus, the impairments should have been combined. Under the case law outlined above, Worker cannot rest on his own unsubstantiated assertions. We hold that, as a matter of law, Worker failed to provide a sufficient basis upon which the WCJ would have been permitted to combine Worker's 19% impairment rating with his 23% impairment rating. Accordingly, the WCJ did not err in finding that Worker was 19% impaired.

**CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Judge**

_____

**TIMOTHY L. GARCIA, Judge**